# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 7, 2020          Decided June 9, 2020

No. 19-7119

PHYLLIS FRANK, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,
APPELLANT

v.

AUTOVEST, LLC, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-02773)

*Dean Gregory* argued the cause and filed the briefs for appellant.

*Scott A. King* argued the cause for appellees. With him on the brief were *Jessica E. Salisbury-Copper* and *Eric N. Heyer*.

Before: SRINIVASAN, *Chief Judge*, and GRIFFITH and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: When Phyllis Frank failed to make her monthly car payments, Autovest, LLC acquired

Frank's debt and sued to collect. In the wake of that aborted collection action, Frank sued Autovest and its debt-collection agency under the Fair Debt Collection Practices Act (FDCPA or the "Act"), 15 U.S.C. § 1692 *et seq.* Because Frank did not suffer a concrete injury-in-fact traceable to the alleged statutory violations, she lacks Article III standing. Accordingly, we vacate the district court's order and remand with instructions to dismiss the complaint.

I

Frank purchased a used Chevrolet Impala in May 2011. The dealership immediately assigned its interest in the financing agreement to First Investors Financial Services (FIFS), and Frank understood that she was financing the vehicle with money borrowed from FIFS. *See* Frank Dep. 22:1-7, J.A. 11. Frank fell behind on payments after losing her job and becoming homeless. She defaulted on the loan in 2014 and voluntarily surrendered the vehicle to FIFS in August 2015. Frank's debt changed hands several times, but was ultimately acquired by Autovest. Michael Andrews & Associates ("Andrews"), Autovest's agent for debt collection, mailed Frank a pair of letters explaining that Autovest had purchased her debt and instructing her to submit all future payments to Andrews's office.

In October 2016, Autovest sued Frank in the Superior Court for the District of Columbia to collect the outstanding principal of $8,557.53 plus interest, attorney's fees, and costs. *See* Complaint for Deficiency Balance, *Autovest, LLC v. Phyllis Frank*, No. 2016-CA-007373 (D.C. Super. Oct. 5, 2016), J.A. 59-60. Autovest attached a sworn "Verification of Complaint" signed by Christina Dunn, who identified herself as an "agent/officer/employee of the Plaintiff" with the

"authority to verify the attached complaint." J.A. 75. But Dunn was employed by Andrews, not Autovest.

Four months later, the Superior Court issued an order of default. Frank moved to vacate the default and filed a pro se answer. Autovest moved for default judgment in April 2017, relying on an affidavit signed by Glenn E. Deuman. Deuman averred that he was "employed by Autovest, LLC . . . as [a] Sr. Technical Product Manager." Deuman Aff. ¶ 1, J.A. 84. Like Dunn, however, Deuman actually worked for Andrews. Autovest also filed a fee affidavit in which its attorney, Robert D. Wagman, explained that his representation of Autovest was "handled on a contingency fee basis." Wagman Aff. ¶ 3, J.A. 98. But Wagman then calculated his fees using the lodestar method, and the motion for default judgment sought only that lodestar amount of $895. *Id.* at ¶¶ 6-7, J.A. 98-99; Defs. Motion for Summary Judgment Ex. 7 at 4, No. 17-cv-2773 (D.D.C. Feb. 12, 2019), Dkt. No. 34-7.

Frank paid $20 to vacate the default, declined Autovest's offer to enter judgment by consent, and retained counsel. On January 25, 2018, the Superior Court granted Autovest's request to dismiss its collection suit with prejudice.

Frank filed this putative class action against Autovest and Andrews in federal district court in December 2017. Her First Amended Complaint alleges that the Dunn and Deuman affidavits contain "false, deceptive, or misleading representation[s]" under 15 U.S.C. § 1692e. Am. Compl. ¶¶ 56-57, 61-62, 64-65, S.A. 19-21. Frank also characterizes the affidavits as conduct designed to "harass, oppress, or abuse" in violation of section 1692d, *id.* ¶¶ 48-49, 52-53, S.A. 18-19, and as "unfair or unconscionable" debt-collection practices under section 1692f, *id.* at ¶¶ 67-68, S.A. 21. Finally, Frank alleges that Autovest violated the same provisions of the

Act by attempting to collect contractually unauthorized contingency fees. *Id.* at ¶¶ 54, 58, 59, 63, 69, S.A. 20-21.

The district court denied Autovest and Andrews's motion to dismiss for failure to state a claim, and the case proceeded to discovery. At her deposition, Frank testified that she "felt [she] was being scammed" when she learned about the collection suit because she had "never heard of Autovest." Frank Dep. 37:3-13, J.A. 17. However, Frank denied "tak[ing] action" or "refrain[ing] from doing anything" because of the representations of employment in the Dunn and Deuman affidavits. *Id.* at 55:17-56:5, 59:17-60:4, J.A. 28-29, 32-33. Likewise, Frank answered "No" when asked whether she undertook or avoided any action or made any payments "as a result of" the Wagman affidavit. *Id.* at 62:13-63:2, J.A. 35-36.

Autovest and Andrews moved for summary judgment, and the district court granted their motion on September 29, 2019. On the section 1692e false-statement claims, the court reasoned that any falsehoods in the Dunn and Deuman affidavits were immaterial—and thus not actionable—because they "had *no* effect on Frank's ability to respond or to dispute the debt." Mem. Op. at 11, J.A. 192. On the contingency-fee claims, the court concluded that Autovest did not attempt to collect such fees; Wagman merely "referred to his contingency-fee relationship with Autovest." *Id.* at 12, J.A. 193. Frank appealed.

II

Article III requires a concrete and particularized injury-in-fact traceable to the defendant's conduct and redressable by a favorable judicial order. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Although the district court did not evaluate Frank's standing, we have "an independent obligation to assure

that standing exists." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

Frank satisfied her burden at the pleading stage by including "general factual allegations of injury resulting from the defendant's conduct." *Lujan*, 504 U.S. at 561. Her complaint says that she "was deceived by the Defendants' false, deceptive and misleading representations"; that she suffered "agitation, annoyance, emotional distress, and undue inconvenience"; and that she "incurred actual damages including . . . attorney's fees and costs." Am. Compl. ¶¶ 32-34, S.A. 16. But at the summary-judgment stage, the plaintiff must demonstrate standing by "affidavit or other evidence." *Lujan*, 504 U.S. at 561.

Frank hasn't carried that burden. She fails to identify a concrete personal injury traceable to the false representations in the Dunn and Deuman affidavits or the alleged request for contingency fees in the Wagman affidavit. In fact, Frank testified unequivocally that she neither took nor failed to take *any action* because of these statements. *See* Frank Dep. 55:17-56:2, 59:17-60:10, 62:13-63:2, J.A. 28-29, 32-33, 35-36. Nor did Frank testify that she was otherwise confused, misled, or harmed in any relevant way during the collection action by the contested affidavits. And although Frank stated that Autovest's suit caused her stress and inconvenience, *see id.* at 40:13-22, J.A. 19, she never connected those general harms to the affidavits, *see id.* at 64:8-65:22, 67:15-68:11, J.A. 37-40. Because Frank was unaffected by the conduct that underlies her FDCPA claims, she lacks Article III standing.

Frank's counterarguments are unconvincing. First, she points to pocketbook injuries in the form of "court costs and attorney's fees" she incurred "defending Autovest's lawsuit." Frank Reply 9. But the record contains no evidence linking

these expenses to the alleged statutory violations. Frank testified that her litigation decisions were driven by unfamiliarity with Autovest, not the contents of the Dunn, Deuman, or Wagman affidavits. *See* Frank Dep. 37:3-13, J.A. 17 (Q: "What made you decide to seek counsel in connection with the collection action?" A: "Because I felt I was being scammed. . . . I never heard of Autovest."); *see also id.* at 57:2-8, 68:4-11, 70:13-71:13, J.A. 30, 40, 42-43. In short, there's no evidence that the contested statements rendered litigation more expensive or onerous.

Second, Frank argues that she suffered an informational injury when Dunn and Deuman "denied [her] access to truthful information." Frank Reply 10. A plaintiff suffers a cognizable injury if she (1) "has been deprived of information that, on [her] interpretation, a statute requires . . . a third party to disclose," and (2) "suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016). Frank cannot satisfy the second requirement. Again, she disclaimed detrimental reliance—or any other harm—based on the misrepresentations in the Dunn and Deuman affidavits.

Finally, Frank contends that the alleged FDCPA violations encompass injuries of "the type Congress 'sought to curb,'" and thus that she need not prove "any *additional* harm," such as "[r]eliance on false information." Frank Reply 9 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 1550 (2016)). For support, she cites the Act's private right of action, 15 U.S.C. § 1692k, and Congress's recognition that "[a]busive debt collection practices contribute to . . . personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," *id.* § 1692(a).

As the Supreme Court clarified in *Spokeo*, however, "Article III standing requires a concrete injury even in the context of a statutory violation." 136 S. Ct. at 1549. Congress may "define [new] injuries and articulate [new] chains of causation." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring). But "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549; *see also Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1063 (D.C. Cir. 2019) ("The concreteness component of injury in fact sharply limits when a plaintiff can establish standing based solely on a violation of his statutory rights."). Nothing in the FDCPA suggests that *every* violation of the provisions implicated here—no matter how immaterial the infraction—creates a cognizable injury. *See Hagy v. Demers & Adams*, 882 F.3d 616, 621 (6th Cir. 2018) ("Nowhere in the [FDCPA] . . . does Congress explain why [a violation of 15 U.S.C. § 1692e(11)] *always* creates an Article III injury.").

Nor is it enough for Frank to simply point to the false statements in the Dunn and Deuman affidavits, because "not all inaccuracies cause harm or present any material risk of harm." *Spokeo*, 136 S. Ct. at 1550; *see also Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) ("[S]ome statutory violations . . . result in no harm, even if they involve[] producing information in a way that violate[s] the law." (internal quotation marks omitted)). A misrepresentation in a debt collector's court affidavit—including a false statement about the affiant's employer—is certainly *capable* of causing a concrete and particularized injury. But Frank has not demonstrated that *these* statements had that effect. Without that showing, Frank lacks standing—even if Autovest and Andrews violated the FDCPA.

Nevertheless, Frank insists that her subjective response to the contested affidavits is irrelevant. All that matters, in her telling, is the affidavits' likely effect on a hypothetical unsophisticated debtor. Frank Br. 10; Oral Arg. Tr. 4:18-22. But this argument confuses standing with the merits. Frank correctly identifies the *substantive* standard that governs her FDCPA claims, which asks whether the debt collector's statement would confuse or mislead the unsophisticated consumer (or in some courts, the *least* sophisticated consumer). *See Jones v. Dufek*, 830 F.3d 523, 525 n.2 (D.C. Cir. 2016) (explaining that although "[t]he term 'unsophisticated' is probably more accurate[,] . . . [i]n practice," the formulations "appear to be the same"). Under this standard, "the specific plaintiff need not prove that she was actually confused or misled, only that the objective," unsophisticated debtor would be. *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015); *see also Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) ("[T]he FDCPA does not require that a plaintiff actually be confused.").

We agree with Frank that the FDCPA creates statutory rights and remedies designed to protect the unsophisticated consumer. *Cf. Jones*, 830 F.3d at 525. But Congress's effort to protect plaintiffs cannot relieve them of the requirement to establish Article III standing—including a "concrete *and* particularized" injury-in-fact. *Spokeo*, 136 S. Ct. at 1548 (explaining that a "particularized" injury is "personal" to the plaintiff). "Broad though Congress's powers may be to define and create injuries, they cannot override constitutional limits." *Hagy*, 882 F.3d at 623.

This mismatch between the (objective) merits inquiry and the (subjective) standing inquiry is not unique to the FDCPA, but it can trip up an unsuspecting plaintiff. And case law has not always helped matters. Some courts have characterized the

Act as "enlist[ing] the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jensen*, 791 F.3d at 419 (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008)).

Read too broadly, this view of the FDCPA is incompatible with the Supreme Court's standing jurisprudence. *See Lujan*, 504 U.S. at 577 (explaining that "a subclass of citizens who suffer no distinctive concrete harm" may not sue to enforce statutory rights). Article III's case-or-controversy requirement remains in effect regardless of the doctrinal test that courts apply to FDCPA claims. And as decisions by our sister circuits indicate, the Act is rife with procedural requirements and substantive prohibitions that do not necessarily trigger concrete injuries when violated. *See Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 339 (7th Cir. 2019) (concluding that a debt collector's failure to inform the debtor that a challenge to the debt under section 1692g(a) must be "in writing" did not cause concrete harm); *Hagy*, 882 F.3d at 622 (holding that the plaintiffs lacked standing to bring a claim under section 1692e(11) for failure to disclose debt-collector status because they did not show that "the non-disclosure created a risk of double payment, caused anxiety, or led to any other concrete harm").

After *Spokeo*, a plaintiff must demonstrate a subjective— that is, an actual—personal injury for standing even when his merits argument turns on the perspective of an objective, unsophisticated consumer. On the margin, this rule might hamper the deterrence purpose of the Act by reducing the number of viable civil suits. Still, an FDCPA plaintiff possesses multiple avenues to standing, *see Hagy*, 822 F.3d at

622, and he need not suffer the *same* harm that underlies his statutory claim. For instance, a plaintiff could submit evidence of investigatory injuries—*e.g.*, resources spent uncovering or confirming the truth—rather than outright deception. In short, there's ample room for consumers of all sorts and levels of sophistication to bring FDCPA suits, but under Article III, they must be proper plaintiffs.

## III

We vacate the district court's judgment and remand with instructions to dismiss the complaint for lack of jurisdiction.

*So ordered.*