FILED
United States Court of Appeals
Tenth Circuit

August 8, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

———————————————

JASON E. TAVERNARO,

    Plaintiff - Appellant,

v.

PIONEER CREDIT RECOVERY, INC.,

    Defendant - Appellee.

No. 20-3219

———————————————

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:20-CV-02141-KHV-ADM)**

———————————————

Christopher E. Roberts, Butsch Roberts & Associates, LLC, Clayton, Missouri (Mark D. Molner, Molner Law Group, LLC, Kansas City, Missouri, with him on the briefs), for Plaintiff-Appellant.

Lisa M. Simonetti, Greenberg Traurig, LLP, Los Angeles, California (Lindsay N. Aherne, Greenberg Traurig, LLP, Denver, Colorado, with her on the brief), for Defendant-Appellee.

———————————————

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **McHUGH**, Circuit Judges.

———————————————

**TYMKOVICH**, Chief Judge.

———————————————

This case requires us to consider whether Pioneer Credit Recovery, Inc., violated the Fair Debt Collection Practices Act (FDCPA) when it sent Jason Tavernaro a letter attempting to collect a student loan debt. The district court

dismissed Mr. Tavernaro's complaint for failure to state a claim because the alleged facts were insufficient to establish that Pioneer used materially misleading, unfair, or unconscionable means to collect the debt, as required by the FDCPA.

We affirm. We conclude that violations of 15 U.S.C. § 1692e for false or misleading communications must be material, and materiality is determined through the perspective of the reasonable consumer. Applying that standard, we find Pioneer's letter was not materially misleading. And because Mr. Tavernaro's other claim under § 1692f for unfair communications was similarly based on the § 1692e claim, we conclude his § 1692f claim also fails.

## I.     Background

### A. Factual Background

Jason Tavernaro borrowed money through the Family Federal Education Loan program to pay for schooling, and then he defaulted on that debt. The defaulted debt was sold to Educational Credit Management Corporation (ECMC)—a federal student loan guaranty agency—which then contracted with Pioneer Credit Recovery, Inc., to help collect the debt.[1]

In February 2020, in an attempt to collect the outstanding balance, Pioneer sent Mr. Tavernaro's employer a packet containing an Order of Withholding from

---

[1] Mr. Tavernaro denies that he owes the debt. Some of the information in this paragraph was derived from Pioneer's brief, and we do not consider it in our analysis. We recount it merely for context.

Earnings. The Order required Mr. Tavernaro's employer to withhold a portion of his earnings and then remit the withheld wages to Pioneer.

The entire packet contained seven pages. The first two pages are a letter addressed to Mr. Tavernaro's employer that provided information about Mr. Tavernaro's alleged debt and ordered his employer to garnish his wages and send them to Pioneer.[2] The third page is an "Employer Acknowledgement of Wage Withholding," which—like its title suggests—was to be filled out by Mr. Tavernaro's employer and returned to Pioneer. Aplt. App. at 17. Pages four through six are the "Handbook for Employers," which provides some additional information to Mr. Tavernaro's employer. *Id.* at 18–20. And the last page is a worksheet to calculate the amount to be withheld per pay period. *Id.* at 21.

For clarity, we will describe the letter's key contents, beginning with the first page. At the top-right corner of the first page, ECMC's logo is prominently displayed. Centered near the middle of the same page is the letter's title, making clear the letter is an "Order of Withholding from Earnings." *Id.* at 15. The text clarifies ECMC "is the holder of a defaulted federally insured student loan debt" and that the letter "is an attempt, by a debt collector, to collect a debt." *Id.* Near the bottom of the first page, the reader is prompted to "PLEASE SEE [THE] NEXT PAGE FOR IMPORTANT INFORMATION." *Id.*

---

[2] The only portion of the packet truly at issue here is the first two pages, and we will refer to these two pages as "the letter" or "the order."

On the next page, the letter provides details about Mr. Tavernaro, his debt, and the withholding payments. Near the middle of this second page, Pioneer is named for the first time in the letter. Specifically, it states, "Pioneer Credit Recovery, Inc. is assisting ECMC with administrative activities associated with this administrative wage garnishment." *Id.* at 16. It then instructs the employer to remit payments to Pioneer and provides Pioneer's mailing address. And finally, the letter admonishes the reader to "please call . . . or send correspondence to" Pioneer "[i]f [it has] questions regarding this matter" and again provides Pioneer's mailing address and phone number. *Id.*

After Mr. Tavernaro's employer received the letter, it withheld $652.97 of his wages and tendered the garnished funds to Pioneer. Mr. Tavernaro then filed suit against Pioneer on behalf of himself and a putative class, alleging Pioneer violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. He specifically alleged Pioneer violated the portions of the FDCPA that prohibit the use of "false, deceptive, or misleading representation[s]," *id.* § 1692e, or "unfair or unconscionable means," *id.* § 1692f, in attempting to collect a debt.

### B. Procedural Background

In his complaint, Mr. Tavernaro accused Pioneer of employing deceptive and unfair practices in attempting to collect the debt he allegedly owed. Specifically, Mr. Tavernaro took issue with the contents of the letter. According to him, Pioneer deceptively sent the letter "to appear as though it were sent by ECMC." Aplt. App. at 9, ¶ 17. To achieve that deception, "Pioneer used

4

ECMC's name and logo on the[] letter." *Id.* at 10, ¶ 30. And the allegedly deceptive use of ECMC's "name and logo on the first page of the[] letter" was also "an unfair or unconscionable means [used] to collect a debt." Aplt. App. at 10–11, ¶ 33.

Mr. Tavernaro alleged four violations of the FDCPA: (1) violation of the catch-all provision for § 1692f; (2) violation of the catch-all provision for § 1692e; (3) violation of § 1692e(10), which prohibits the use of false representations or deceptive means to collect a debt or obtain information concerning a consumer, and; (4) violation of § 1692e(14), which requires debt collectors to use their "true name." Aplt. App. at 9–11, ¶¶ 29, 31, 32, 33.

In response, Pioneer filed a motion to dismiss for failure to state a claim, which the district court granted. *See* Fed. R. Civ. P. 12(b)(6). The district court granted Pioneer's motion because Mr. Tavernaro failed to plausibly allege Pioneer violated the FDCPA. For a violation of 15 U.S.C. § 1692e, the court required Mr. Tavernaro to plead facts sufficient to show "(1) [Pioneer] engaged in a practice that was false, deceptive, or misleading and (2) the false, deceptive, or misleading statement was material, in that it had the potential to frustrate the least sophisticated consumer's ability to choose his or her response." Aplt. App. at 26 (citation omitted). Applying the "least sophisticated consumer" test for materiality, the court concluded Mr. Tavernaro's "assertions [did] not even raise the possibility that the OWE was materially misleading" because he failed to

5

"allege[] how knowledge of who mailed the OWE was material to his, his employer's[,] or the least sophisticated consumer's response." *Id.* at 29.

Because the court concluded the letter was not misleading, it necessarily concluded the letter was not unfair or unconscionable. *See* 15 U.S.C. § 1692f. Although whether a letter is misleading is a different question from whether it is unfair or unconscionable, the court resolved the issues jointly because Mr. Tavernaro's theory that the letter was unfair or unconscionable was premised on the idea that it was misleading. As all parties agreed, Mr. Tavernaro's claims "turn[ed] on the same issue: whether the OWE was materially misleading." Aplt. App. at 31. Consequently, the court granted Pioneer's motion to dismiss.

## II.    Discussion

We find the district court properly concluded Mr. Tavernaro failed to state a claim under the FDCPA. We first review and consider the FDCPA's text, structure, and purpose, as well as precedent from other circuits. Then, we conclude that statements violate § 1692e only if they are material, meaning that they frustrate the reasonable consumer's ability to intelligently respond. Applying this standard, we conclude Mr. Tavernaro's alleged facts are insufficient to find that the reasonable consumer would be materially misled by the letter.

We review dismissal under Rule 12(b)(6) for failure to state a claim de novo. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In doing so, we accept "all the well-pleaded allegations of the complaint

6

as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs,* 771 F.3d 697, 700 (10th Cir. 2014) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We "disregard conclusory statements and look only to whether the remaining[] factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### A. FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To achieve those purposes, the FDCPA places limits on debt collection practices, and it provides a private right of action that allows successful plaintiffs to recover damages for certain violations. *Id.* § 1692k.

Under the FDCPA, debt collectors cannot use false, deceptive, or misleading representations, or unfair or unconscionable means in attempting to collect a debt. *See id.* §§ 1692e, 1692f. The statutory text for both § 1692e and § 1692f provides examples of practices that violate these prohibitions, but the text makes clear the examples are non-exhaustive. *Id.* § 1692e ("Without limiting

7

the general application of the foregoing, the following conduct is a violation of

this section."); *id.* § 1692f (same).  Among the example violations of § 1692e are

the failure to use the debt collector's "true name" and the use of false

representations to attempt to collect any debt or obtain information concerning a

consumer.  *Id.* § 1692e(14), (10).

To prevail on a FDCPA claim, a plaintiff must prove four elements:  (1) the

plaintiff is a "consumer" under *id.* § 1692a(3); (2) the debt at issue arose out of a

transaction entered into primarily for personal, family, or household purposes; (3)

the defendant is a debt collector under *id.* § 1692a(6); and (4) through its acts or

omissions, the defendant violated the FDCPA.  *Douglass v. Convergent*

*Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *see also Maynard v. Cannon*, 401

F. App'x 389, 393 (10th Cir. 2010).  The district court concluded—and we

agree—that the only element at issue is whether Pioneer violated the FDCPA.

And for purposes of 15 U.S.C. § 1692e, (1) a consumer must demonstrate

materiality, and (2) materiality means that a reasonable consumer would be

frustrated in his ability to intelligently respond to the debt collection effort.

### 1. Materiality

Although § 1692e does not contain the word "material" in its text, we

construe it to require materiality based on the language and obvious function of

the statute.  The FDCPA "does not make actionable every false representation;"

instead, to be actionable, "statement[s] must be material, which is to say capable

8

of influencing the consumer's decision-making process." *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 894 (6th Cir. 2020).

The circuits agree.[3] For example, the Seventh Circuit in *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009), concluded only *materially* false, deceptive, or misleading statements are actionable under § 1692e. The court noted—and we find persuasive—that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." *Id.* (citing *Carter v. United States*, 530 U.S. 255 (2000); *Neder v. United States*, 527 U.S. 1 (1999)). A statement directed to consumers is designed to provide information that helps them choose intelligently, "and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Id.* at 757–58. We agree that § 1692e requires any misstatements satisfy a materiality standard.[4]

---

[3] "Every circuit to consider the question . . . has construed the statute to contain a materiality requirement." *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 894 (6th Cir. 2020) (citing *Hill v. Accts. Receivable Servs., LLC*, 888 F.3d 343, 346 (8th Cir. 2018) (collecting cases)).

[4] We need not answer whether § 1692f also contains a materiality requirement. It is unnecessary because Mr. Tavernaro alleged that Pioneer, "by misrepresenting that the OWE letter was sent by ECMC," "used an unfair or unconscionable means to collect [the] debt." Aplt. App. at 10–11, ¶ 33. In other words, his § 1692f claim was grounded solely on a theory of misrepresentation. Because his § 1692f claim is so intertwined with the § 1692e claim, we will only find the letter to be unfair or unconscionable if it is materially misleading.

*2. Reasonable Consumer*

Having concluded that only materially misleading, deceptive, or false statements violate § 1692e, we are left with an open question:  How is materiality measured?  Is it from the perspective of a hypothetical "unsophisticated consumer" or from that of a "reasonable consumer?"  As the Supreme Court noted in its most recent FDCPA case, *Sheriff v. Gillie*, 578 U.S. 317 (2016), it has yet to decide "whether a potentially false or misleading statement should be viewed from the perspective of the least sophisticated consumer . . . or the average consumer who has defaulted on a debt."  *Id.* at 327 n.6 (cleaned up).

The lower court cases suggest the standards differ, but as we explain, in reality the standards are comparable in practice.  The courts applying the least sophisticated consumer standard tend to "agree that although the least sophisticated debtor may be uninformed, naïve, and gullible, nonetheless her interpretation of a collection notice cannot be bizarre or unreasonable." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014) (internal quotation marks omitted); *see also Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) ("[T]his Court has been careful not to conflate lack of sophistication with unreasonableness."); *cf. Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (applying a similar standard to the unsophisticated consumer test) ("[The unsophisticated consumer test] is objective, turning . . . on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer."); *but see Brown v. Card*

*Serv. Center*, 464 F.3d 450, 454 (3d Cir. 2006) ("The least sophisticated debtor standard requires more than simply examining whether particular language would deceive or mislead a reasonable debtor because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor.") (internal quotation marks omitted).

"[T]he reasonable person standard is well ensconced in the law in a variety of legal contexts in which a claim of deception is brought." *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1398 (E.D. Cal. 1994) (collecting cases).  Some of the sources illustrate the concept.  For example, the Federal Trade Commission uses a "reasonable consumer" standard to protect consumers from false advertising, deploying well-settled standards to determine whether statements are deceptive or misleading and decide whether the statements are material.[5]

To start, the FTC "examines the overall net impression of [a representation to consumers]." *ECM BioFilms, Inc. v. FTC*, 851 F.3d 599, 610 (6th Cir. 2017) (internal quotation marks omitted).  In examining the representation, the FTC does not look to "an isolated word or phrase." *FTC v. NPB Advert., Inc.*, 218 F.

---

[5]  The Federal Trade Commission Act makes it "unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement" through certain means or affecting certain industries.  15 U.S.C. § 52.  In 1983, the FTC issued a policy statement adopting the now well-settled "reasonable consumer" standard.  FTC, *Deceptive Acts and Practices*, Trade Reg. Rep., ¶ 13,205; 2016 WL 6107331, at *2–4.  Although the policy statement is not binding on the FTC or the courts, the Commission began to use the "reasonable consumer" standard, *Cliffdale Associates, Inc.*, 103 F.T.C. 110 (1984), and it continues to apply the same standard today.

Supp. 3d 1352, 1358 (M.D. Fla. 2016).  Rather, the FTC considers whether at least a significant minority of reasonable consumers would likely interpret a representation to have the purportedly misleading meaning.  *ECM BioFilms, Inc.*, 851 F.3d at 610.  That is to say, a representation is considered misleading "if at least a significant minority of reasonable consumers would be likely to take away the misleading claim."  *See id.* at 610–11 (cleaned up).  After determining an ad is misleading, the FTC reviews whether representation at issue is material.  "A representation is material if a reasonable prospective buyer is likely to rely upon it."  *FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1386 (M.D. Fla. 2018).

Another helpful illustration of the reasonable consumer standard comes from application of the Truth-in-Lending Act.  15 U.S.C. §§ 1601 *et seq.*  In *Bustamante v. First Fed. Sav. and Loan Ass'n*, 619 F.2d 360, 362 (5th Cir. 1980), the Fifth Circuit held that a borrower was entitled to recission of a loan contract under the TILA because he sought recission before the lender made necessary material disclosures.  *Bustamante*, 619 F.2d at 362.  The court explained that in determining whether an omission was material for purposes of the 15 U.S.C. § 1635, it applies "an objective standard to determine the materiality question, based on what a *reasonable consumer* would find significant in deciding whether to use credit."  *Id.* at 364 (emphasis added).  Because the aim of the TILA is to protect consumers, the Fifth Circuit refused a subjective standard that would (1) "protect only the sophisticated credit shopper" and (2) "fail to protect the

12

unsophisticated or uneducated consumer, or redress violations of the [TILA], and would not promote the informed use of credit." *Id.* (cleaned up).

To be sure, some courts that have considered the question in the context of debt collection have concluded that materiality is measured by the so-called imaginary "least sophisticated consumer." [6] For example, in the Eleventh Circuit's *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985), the court asked "whether the 'least sophisticated consumer' would be deceived by [the debt collector's] letters." *Id.* at 1177. In its view, the least sophisticated consumer standard requires courts to "gauge the tendency of a debt collector's language to deceive" by viewing communications from the perspective of "debtors on the *low side of reasonable capacity*." *See id.* at 1174 n.6 (internal quotation marks omitted) (emphasis added). The *Jeter* court first considered the FTCA because the FTC enforced consumer protection laws against debt collectors before

---

[6] A number of circuits have applied the least sophisticated or unsophisticated consumer tests. *See Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 n.4 (1st Cir. 2014) (unsophisticated consumer); *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (least sophisticated consumer); *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 427 (3d Cir. 2018) (least sophisticated consumer); *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394 (4th Cir. 2014) (least sophisticated consumer); *Gonzalez v. Kay*, 577 F.3d 600, 607–08 (5th Cir. 2009) (least sophisticated consumer); *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611–12 (6th Cir. 2009) (least sophisticated consumer); *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999) (unsophisticated consumer); *Peters v. General Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002) (unsophisticated consumer); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (least sophisticated consumer); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193–94 (11th Cir. 2010) (least sophisticated consumer); *Frank v. Autovest, LLC*, 961 F.3d 1185, 1189 (D.C. Cir. 2020) (unsophisticated consumer).

13

enactment of the FDCPA. *Id.* at 1172. In short, it reasoned that because (1) the FTCA "was enacted to protect unsophisticated consumers, not only 'reasonable consumers,'" and (2) the FTC looked to a "less sophisticated consumer," it follows "Congress intended the [same] standard under the FDCPA." *Id.* at 1172, 1173, 1175. But *Jeter* leaves us with a vague and nebulous standard that gives little guidance to courts or creditors trying to comply with the law.

These cases fail to persuade us that Congress intended for the application of the least sophisticated consumer standard. Rather than presume Congress intended for the application of a specific standard that is not mentioned in the statute's text, we infer Congress operationalized its intent to protect debtors in other ways and under traditional standards.

For example, the FDCPA and its amendments created a private right of action, § 1692k—which did not exist under the FTC Act, *see Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 989 (D.C. Cir. 1973)—and placed more expansive limits on debt collectors' practices. *See, e.g.*, § 1692b (placing limits on debt collectors' actions taken for the purpose of acquiring location information of a debtor when communicating with a person other than the debtor); § 1692c (limiting debt collectors' communications with debtors and third parties for the purpose of collecting debt); § 1692d (prohibiting debt collectors from taking actions that have the natural consequence of harassing, oppressing, or abusing any person in connection with the collection of a debt); § 1692e (providing a non-exhaustive list of conduct that is false, deceptive, or misleading); § 1692f

14

(providing a non-exhaustive list of conduct that is unfair or unconscionable); § 1692g (requiring debt collectors to validate debts); § 1692h (requiring creditors to apply payments to non-disputed debts when the consumer owes multiple debts); § 1692i (limiting the venues where a debt collector may file suit to enforce collection of certain debts); § 1692j (prohibiting the use of any form that creates the false impression that someone other than the creditor is participating in the collection of a debt).  Thus, even if we apply a materiality standard that is framed differently than the FTC's standard, the FDCPA—viewed in its entirety—results in more protection for debtors.[7]

Nor are we convinced that the least sophisticated consumer standard is correct as a theoretical matter; in practice most courts implementing that standard have incorporated aspects of the reasonable consumer standard.  In applying the least sophisticated consumer standard, courts typically begin by noting the least sophisticated consumer is not an expert but then quickly explain he is not *actually* the *least* sophisticated consumer.  *See, e.g.*, *Denciger v. Network Recovery Servs., Inc.*, 493 F. Supp. 3d 138, 141 (E.D.N.Y. 2020) ("This hypothetical consumer

---

[7] Although we have previously said that the FDCPA "is a remedial statute, [so] it should be construed liberally in favor of the consumer," *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002), we find that cannon of construction unhelpful here.  "This maxim is useless in deciding concrete cases.  *Every* statute is remedial in the sense that it alters the law or favors one group over another." *Stomper v. Amalgamated Transit Union, Local 241*, 27 F.3d 316, 320 (7th Cir. 1994).  It is clear Congress enacted the FDCPA to protect consumers, 15 U.S.C. §1692(a), but this maxim does not tell us "how far to go" in one direction or the other.  *See id.*

'does not have the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer.'  But the consumer 'is neither irrational nor a dolt,' and a court must be 'careful not to conflate lack of sophistication with unreasonableness.'" (citations omitted)).  They also remind us that the least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care."  *Id.* (internal quotation marks omitted).

Taking the standard literally, we would review collection notices from the perspective of a consumer less sophisticated than anyone else.  *See Least*, Oxford English Dictionary (3d ed. 2018) ("Less than any other in size, extent, or degree.").  But no court applies the standard to mean what it says.  Otherwise, could we really expect the consumer with less sophistication than all other consumers to be literate, read the entirety of collection notices with some care, and be rational?  Instead, in varying degrees, courts construe this hypothetical consumer to be more sophisticated than the actual least sophisticated consumer.

In reality, the nebulous least sophisticated consumer standard is simply a misnomer.  A few circuits, recognizing problems with the least sophisticated consumer standard, instead look to the "unsophisticated consumer."  *See Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999); *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002); *Frank v. Autovest LLC*, 961 F.3d 1185, 1189 (D.C. Cir. 2020).  The Seventh Circuit frames the unsophisticated consumer standard's inquiry as "whether a person of modest

16

education and limited commercial savvy would be likely to be deceived." *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 774 (7th Cir. 2007). Rather than view representations from the standpoint "of the *least* intelligent consumer in this nation of 300 million people," the Seventh Circuit looks to "the average consumer in the lowest quartile (or some other substantial bottom fraction) of consumer competence."[8] *Id.* The standard is variable, such as when a "debt collector has targeted a particularly vulnerable group—say, consumers who he knows have a poor command of English." *Id.*

The D.C. Circuit observed that although the least sophisticated consumer and unsophisticated consumer standards use different names, they are functionally identical. *Jones v. Dufek*, 830 F.3d 523, 525 n.2 (D.C. Cir. 2016) ("The term 'unsophisticated' is probably more accurate," but "[i]n practice, the 'least sophisticated' and 'unsophisticated' appear to be the same"). We agree the unsophisticated consumer test is functionally the same as the least sophisticated consumer standard, and the unsophisticated consumer is descriptively more accurate to the tests' function. Even so, neither standard is correct because

---

[8] Not all courts that use the unsophisticated consumer standard have been as specific as the Seventh Circuit. But they generally view representations from the perspective of "consumers of below average sophistication or intelligence" while still maintaining "an objective element of reasonableness." *See Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002) (internal quotation marks omitted).

17

neither is statutorily required, and both suffer from vagueness and difficulty to apply.

We thus apply the "reasonable consumer" standard—as applied in the FTCA's false advertising cases and the TILA's nondisclosure jurisprudence. Using the reasonable consumer to assess materiality is consistent with other consumer protection laws and provides courts and litigants with a comparable and familiar standard. [9] And it is sufficiently protective of consumers, whether sophisticated or not.

In summary, a representation violates § 1692e only if it is materially false, deceptive, or misleading to the reasonable consumer. Applying this standard, the first question is whether the representation is misleading. In viewing representations from the perspective of the reasonable consumer, we assume the

---

[9] The reasonable consumer standard we apply is also consonant with how materiality is defined in the Restatement (Third) of Torts. The restatement notes that reliance on a fraudulent misrepresentation is only justifiable if the misrepresentation is material. *Restatement (Third) of Torts* § 9 (2020). And "[a] misrepresentation is material if a *reasonable person* would give significant weight to it in deciding whether to enter into the relevant transaction, or if the defendant knew that the plaintiff would give it such weight (whether reasonably or not)." *Id.* § 9 cmt. d (emphasis added). Although a misrepresentation is not identical to a "false, deceptive, or misleading representation," 15 U.S.C. 1692e, we find the restatement persuasive as it similarly deals with deceptive representations that can harm consumers.

What is more, the proposed Restatement of Consumer Contracts also understands deception to be viewed from the perspective of the reasonable consumer. *Restatement of Consumer Contracts* § 7 reporters' notes (Am. L. Inst., Revised Tentative Draft 2, June 2022) ("Deception should be understood broadly to encompass not only outright fraud, but any act or practice that is likely to mislead the *reasonable consumer*." (emphasis added)).

reasonable consumer would read a communication in its entirety and make sense of a communication by assessing it as a whole and in its context. [10] The inquiry is whether the reasonable consumer could reasonably interpret the representation to have multiple meanings, one of which is untrue. If a reasonable consumer would come to only one interpretation, which is accurate, then the representation is not misleading. On the other hand, if a reasonable consumer could understand a representation as misleading, materiality is then assessed by asking whether the reasonable consumer would have his ability to intelligently respond frustrated.

### B. Application

Examining Pioneer's letter, we ask whether the reasonable consumer would have been materially misled by the letter at hand. We conclude no reasonable consumer would have been materially misled. Mr. Tavernaro contends Pioneer violated §§ 1692e and 1692f because the letter gave the appearance of having been sent by ECMC, not Pioneer. Although he claims the letter violates different portions of § 1692e and § 1692f generally, the crux of each claim turns on the same point: whether the letter is materially misleading because it makes the reader believe it was sent by the creditor rather than the debt collector. As

---

[10] The proposed Restatement of Consumer Contracts defines "reasonable" as "[a] conclusion, as determined based on the totality of the circumstances, including the ordinary behavior and perspective of consumers engaged in the type of transaction at issue and their interaction with the business." *Restatement of Consumer Contracts* § 1(a)(8) (Am. L. Inst., Revised Tentative Draft 2, June 2022). As we are similarly determining consumer understanding, we find that definition helpful here.

evidence for his view, Mr. Tavernaro points to (1) the letterhead, which includes ECMC's logo but excludes Pioneer's; (2) the absence of an affirmative statement in the letter that it was sent by Pioneer rather than ECMC; and (3) the signature line, which identifies ECMC but not Pioneer.

Reviewing the letter, a reasonable consumer would not be misled. First, from the beginning of the body of the letter, it forthrightly identifies ECMC as the creditor. Aplt. App at 15 ("[ECMC] is the holder of a defaulted federally insured student loan debt owed to ECMC by the employee referenced below."). Second, the letter states it "is an attempt, by a debt collector, to collect a debt." *Id.* Third, on the next page, the letter clarifies that "Pioneer Credit Recovery, Inc. is assisting ECMC with administrative activities associated with this administrative wage garnishment." *Id.* at 16. In other words, the letter makes clear that ECMC owns the debt, Pioneer is a debt collector helping ECMC with the collection of the debt, and the letter is an attempt to collect the debt.

Even assuming a reasonable consumer would believe ECMC and not Pioneer sent the letter, Mr. Tavernaro fails to demonstrate how that would frustrate the reasonable consumer's ability to respond intelligently. In essence, he argues that "the first page of the collection communication leaves a consumer with the indelible impression that the 'debt collector' is ECMC, rather than Pioneer," Aplt Br. at 36 (citation omitted), and the least sophisticated consumer would "not even know to whom [he] should respond." *Id.* at 35.

20

But no reasonable consumer would be confused about whom to contact if he had any questions about this letter. The second page of the letter clearly states, "[i]f you have any questions regarding this matter, please call [phone number] or send correspondence to: Pioneer Credit Recovery, Inc. [mailing address]." Aplt. App. at 16. And it also directs the reader to remit the withheld wages to Pioneer and lists the relevant address. How one could read these instructions and still not know whom to contact is a mystery.

We also find Mr. Tavernaro's remaining argument similarly unpersuasive. He contends Pioneer violated the "true name" requirement by placing ECMC's logo in the letterhead and omitting its own logo because the "Supreme Court[] held that it is critical for a debt collector to disclose its 'true name' in the letterhead of a written attempt to collect a debt." Aplt. Br. at 26 (citing *Sheriff v. Gillie*, 578 U.S. 317 (2016)). Based on his reading of *Sheriff*, Mr. Tavernaro faults the district court for concluding the purported letterhead logos discrepancy was immaterial because it understood *Sheriff* to stand for the proposition that "debt collector[s] may not lie about their institutional affiliation." Aplt. App. at 29 (cleaned up).

In our view, Mr. Tavernaro misreads *Sheriff*. In *Sheriff*, a debtor sued debt collectors (special counsel) who were contracted by the Ohio Attorney General to collect debts owed to the state, alleging the special counsel violated § 1692e by sending debt collection notices that used the Attorney General's letterhead. 578 U.S. at 320–23. The Court concluded the collection notice was not misleading

21

because "[s]pecial counsel create[d] no false impression" in using the Attorney General's letterhead, in part because they were required by Ohio law to use that letterhead. *Id.* at 326. Read as a whole, the communication "alert[ed] the debtor to both the basis for the payment obligation and the official responsible for enforcement of debts owed to the State, [and] the signature block convey[ed] who the Attorney General ha[d] engaged to collect the debt." *Id.* at 326–27. Similarly, here the letter as a whole alerts Mr. Tavernaro to the basis for his payment obligation and who the creditor and debt collector are. Although the letter here did not include Pioneer's name in the signature line, and there are no allegations in the complaint that ECMC required its logo be used in the letterhead, we find that no reasonable consumer—after reading the letter as a whole—would misunderstand the basis for the debt or the identities of the creditor and debt collector.[11]

The *Sheriff* Court also specifically addressed the "true name" requirement and concluded the special counsel did not violate it. The Court concluded the special counsel did "not employ a false name when using the Attorney General's letterhead" at his instruction while acting as agents for debt collection. *Id.* at

---

[11] Pioneer asserts the letter was authored by ECMC and that, in fact, ECMC was required by regulation to issue the letter in its own name. Aple. Br. at 20–21. That may be the case, but at this stage in litigation (motion to dismiss) we are only permitted to consider facts alleged in the complaint, *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019), and the complaint is silent as to authorship of the letter. We therefore cannot assume ECMC authored the letter.

327. The special counsel did not "misrepresent [their] identity" because the letters they sent "accurately identif[ied] the office primarily responsible for collection of the debt (the Attorney General), special counsel's affiliation with that office, and the address (special counsel's law firm) to which payment should be sent." *Id.* Once again, Pioneer's letter did just that. Although we presume ECMC's logo was not placed on the letterhead on its own behest, Pioneer did not misrepresent its own identity. The reasonable consumer reading the letter in this case would still know who owns the debt (ECMC), who was contracted to help collect the debt (Pioneer), and where to remit debt payments (Pioneer's mailing address). For those reasons, we hold there are insufficient facts alleged to conclude Pioneer violated § 1692e by sending the letter.

As discussed above, Mr. Tavernaro's § 1692f claim—that the letter was an unfair or unconscionable means used in attempting to collect a debt—was premised entirely on the letter's purported deception. Because we hold the letter was not materially misleading based on the alleged facts before us, we necessarily conclude the use of the letter did not violate § 1692f.

## III.   Conclusion

For the aforementioned reasons, we AFFIRM the district court's dismissal of Mr. Tavernaro's claims.