**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEBBIE DONOHUE, and all other
similarly situated persons,
          *Plaintiff-Appellant,*

          v.

QUICK COLLECT, INC., an Oregon
Corporation,
          *Defendant-Appellee.*

No. 09-35183

D.C. No.
2:08-cv-00150-LRS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, Chief District Judge, Presiding

Argued and Submitted
December 10, 2009—Seattle, Washington

Filed January 13, 2010

Before: Ronald M. Gould and Richard C. Tallman,
Circuit Judges, and Roger T. Benitez,* District Judge.

Opinion by Judge Gould

*The Honorable Roger T. Benitez, United States District Judge for the
Southern District of California, sitting by designation.

997

**COUNSEL**

Michael J. Beyer (argued), Spokane, Washington, for plaintiff-appellant Debbie Donohue and all other similarly situated persons.

Christopher J. Kerley (argued), Evans, Craven & Lackie, P.S., Spokane, Washington, for defendant-appellee Quick Collect, Inc.

**OPINION**

GOULD, Circuit Judge:

Debbie Donohue appeals the district court's order denying her motions and granting summary judgment to Quick Collect, Inc. ("Quick Collect") dismissing all of her claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**I**

Donohue was a customer of a pediatric dental practice called the Children's Choice ("Children's Choice") located in Spokane, Washington. Children's Choice has an "Office Financial Policy" outlining customers' payment obligations, which Donohue signed in 2003. The policy states, in pertinent part, as follows: "I understand that all services are due to be paid in full within ninety (90) days of date of service . . . . A finance charge of 1-1/2 % per month will be applied to all accounts over 90 days . . . ."

In October 2007, Children's Choice assigned to Quick Collect, a collection service incorporated in Oregon, the principal and finance charges Donohue owed to Children's Choice. Upon receipt of the assignment, Quick Collect mailed a formal demand letter to Donohue seeking $270.99 in "principal," $24.07 in "assigned interest," and $2.23 in "post assigned interest." Quick Collect did not immediately receive a response from Donohue and referred the matter to attorney Gregory Nielson to commence litigation to collect the amounts due.

In January 2008, Quick Collect brought an action against Donohue and Donohue was served with a summons and complaint (the "Complaint"). The Complaint stated that Quick Collect sought a judgment against Donohue for, among other amounts, "the sum of $270.99, together with interest thereon of 12% per annum . . . in the amount of $32.89." In February

2008, Nielson, on behalf of Quick Collect, sent another demand letter to Donohue (the "Nielson Demand Letter"). The Nielsen Demand Letter stated that Donohue owed, in addition to litigation-related costs, $270.99 for "Principal," and $35.57 for "Interest."

In April 2008, Donohue filed a class-action lawsuit in Washington state court against Quick Collect. Donohue brought the following two federal claims: (1) Quick Collect violated the Fair Debt Collection Practices Act ("FDCPA") by charging a usurious rate of interest—i.e., the Complaint and the Nielsen Demand Letter sought annual interest above 12%, the maximum permitted under Washington law; and (2) Quick Collect violated the FDCPA's prohibition against the use of false, deceptive, or misleading statements in connection with collecting a debt by "misrepresenting the amount of interest" —i.e., the Complaint incorrectly stated that $32.89 was "interest [on the principal] of 12% per annum." Donohue also alleged violations of Washington state law arising out of the same events.

The action was removed to the United States District Court for the Eastern District of Washington and Quick Collect moved for summary judgment on all of Donohue's claims. Donohue thereafter cross-moved for partial summary judgment as to Quick Collect's liability, moved to certify the class, and moved to strike Quick Collect's motion for summary judgment.

Faced with these conflicting motions, on December 31, 2008, the district court granted summary judgment to Quick Collect dismissing Donohue's claims, and denied Donohue's motions. The district court concluded as follows as to Donohue's two FDCPA claims: (1) Quick Collect, through the Complaint and the Nielsen Demand Letter, did not charge a usurious interest rate and so did not violate the FDCPA; and (2) the Complaint accurately set forth the total sum Donohue owed and was not false, deceptive, or misleading under the

FDCPA. Because Quick Collect did not violate the FDCPA, the district court concluded that Donohue could not succeed on her state-law claims either. Donohue timely appeals.

## II

**[1]** We review de novo the district court's interpretation of the FDCPA and its rulings on cross-motions for summary judgment. *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1168 (9th Cir. 2006). Seeking somewhat to level the playing field between debtors and debt collectors, the FDCPA prohibits debt collectors "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). The FDCPA is a strict liability statute that "makes debt collectors liable for violations that are not knowing or intentional." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008).

**[2]** The two FDCPA provisions at issue in this case are 15 U.S.C. §§ 1692e and 1692f. Section 1692e prohibits the use by a debt collector of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e(2) prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt." Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." "The collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of § 1692f(1). Whether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether "the least sophisticated debtor would likely be misled by a communication." *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (internal quotation marks omitted).

## A

First, Donohue claims that Quick Collect, through the Nielsen Demand Letter and the Complaint, violated the FDCPA—

in particular §§ 1692e and 1692f—by charging more than 12% annual interest in contravention of Washington usury law. Washington law prohibits charging more than 12% annual interest "for the loan or forbearance of any money, goods, or things in action." Wash. Rev. Code § 19.52.020. Donohue calculates that the Nielsen Demand Letter sought an interest payment of $35.57 for a period of 289 days, for an effective annual interest rate of 16.6%, and that the Complaint sought an interest payment of $32.89 for a period of 259 days, for an effective annual interest rate of 17.1%.

[3] Quick Collect contends that these so-called interest amounts in the Nielsen Demand Letter and the Complaint are largely comprised of pre-assignment finance charges assessed by Children's Choice, and that the assessment by Children's Choice of the finance charges to Donohue's overdue account does not implicate the usury statute because there is no loan or forbearance under Washington law. Quick Collect argues that, setting aside those finance charges, the interest it charged did not exceed 12%. Donohue replies that, under Children's Choice's Office Financial Policy, the ninety-day "grace period" during which payment is due before a finance charge is applied is consistent with a forbearance and therefore the finance charges must be considered interest. Whether Quick Collect charged a usurious interest rate, therefore, turns on whether or not the finance charges assessed by Children's Choice pursuant to its Office Financial Policy constitute a forbearance under Washington law.

[4] The leading Washington State Supreme Court case on the definition of forbearance under Washington law is *Whitaker v. Spiegel Inc.*, 623 P.2d 1147, 1149 (Wash. 1981), which concerned a financial arrangement between consumers and a mail-order retailer called a "revolving charge account." After consumers made an initial purchase, the purchase price of subsequently purchased items, if there was an unpaid balance, would be added to the existing balance as one account. *Id.* The *Whitaker* court defined a forbearance as "a contractual

obligation of a lender or creditor to refrain, during a given period of time, from requiring the borrower or debtor to pay a loan or debt then due and payable." *Id.* at 1152 (quoting *Hafer v. Spaeth*, 156 P.2d 408, 411 (Wash. 1945)). The Washington State Supreme Court applied this definition and concluded that the revolving charge account was a forbearance:

> The relationship between the respondents and appellant is clearly that of debtor and creditor. Respondents are indebted to appellant upon delivery of the goods and acceptance of them. Appellant, by its credit agreement, has agreed to refrain from immediately requiring respondents or any other debtors to pay their debts. In return, respondents have agreed to pay a constant service charge percentage which is applied against a changeable balance.

*Id.*

**[5]** The reasoning of *Whitaker* makes clear that Children's Choice's payment arrangement, unlike a revolving charge account such as was considered in *Whitaker*, does not constitute a forbearance under Washington law. Children's Choice did not have a contractual obligation to "refrain, during a given period of time, from requiring [Donohue] to pay a loan or debt *then due* and payable." *Id.* (emphasis added). Instead, payment was "due to be paid in full within ninety (90) days of service." Children's Choice was free to enforce the requirement of payment any time after the ninety days in which payment was finally due. Donohue notes that Washington law requires that courts "look through the form of the transaction and consider its substance." *Id.* But the substance here is late fees assessed to encourage timely payment—Children's Choice did not agree to forbear requiring payment from Donohue on her past-due account in exchange for exacting a fee nominally called a "finance charge." We conclude that Children's Choice's assessment of finance charges under these circumstances was not a forbearance. Therefore, Quick

Collect did not charge usurious interest in the Complaint or in the Nielsen Demand Letter, and Donohue's FDCPA claim founded on Quick Collect charging a usurious interest rate cannot succeed.

**B**

Second, Donohue claims the Complaint violated the FDCPA because it contained a false, deceptive, or misleading representation, in particular, a false representation concerning the character of the debt that Donohue owed. *See* 15 U.S.C. § 1692e. The Complaint stated that Donohue owed an interest payment of $32.89 calculated by applying 12% annual interest to the principal owed. That statement is not entirely accurate. $32.89 is actually comprised of two components: $24.07 in pre-assignment finance charges assessed by Children's Choice and calculated at the rate of 1.5% per month, and $8.82 in post-assignment interest calculated at an annual rate of 12%.

**[6]** As a preliminary matter, Quick Collect suggests that a complaint is not a communication subject to the requirements of §§ 1692e and 1692f. The authority Quick Collect provides for this proposition is *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007). But the Seventh Circuit in *Beler* did not decide this issue and, instead, stated, "We postpone to some future case, where the answer matters, the decision whether § 1692e covers the process of litigation." *Id.* at 473. We decide this issue and conclude that a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f.

Concluding otherwise would put our decision in tension with the Supreme Court's reasoning in *Heintz*. In *Heintz*, Darlene Jenkins defaulted on a loan from a bank. 514 U.S. at 293. A lawyer from the bank's law firm, George Heintz, wrote a letter to Jenkins's lawyer listing an amount that Jenkins pur-

portedly owed. *Id.* Jenkins sued Heintz under §§ 1692e(2) and 1692f. *Id.* Heintz contested the applicability of the FDCPA to his debt-collection efforts because he was a lawyer engaged in litigation. *Id.* at 295. The Supreme Court held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Id.* at 299. The Supreme Court reasoned that "the plain language of the [FDCPA] itself says nothing about" an "exemption [for lawyers] in respect to litigation." *Id.* at 297. Nor did it make sense to differentiate between lawyers acting in the capacity of debt collectors and those litigating: "The line . . . between 'legal' activities and 'debt collection' activities was not necessarily apparent to those who debated the legislation, for litigating, at first blush, seems simply one way of collecting a debt." *Id.*

**[7]** We have recognized a limited exception to this rule. In *Guerrero*, we concluded that communications sent only to a debtor's attorney are not actionable under the FDCPA. 499 F.3d at 935-36. We reasoned that *Heintz* only addressed the question of whether the FDCPA applies to lawyers collecting debts through litigation, but *Heintz* did not address how the *identity of the recipient* of the communication impacts FDCPA liability. *Id.* at 937-38. When the recipient of the communication is solely a debtor's attorney, the FDCPA's purpose of protecting unsophisticated consumers is not implicated. *Id.* at 939. Thus, we there concluded that a letter directed "to counsel, and not to his client—'the consumer'— was not a prohibited collection effort." *Id.* at 934. But the limited exception that we outlined in *Guerrero* is inapplicable here. Donohue was personally served with the Complaint. Therefore, Donohue herself, not her lawyer, was the recipient of the communication. Because the complaint was communicated to the consumer, the requirements of the FDCPA apply.

While the communication at issue in *Heintz* was a letter, not a legal pleading as here, the logic of *Heintz* controls our analysis. Quick Collect caused Donohue to be served with the

Complaint to further Quick Collect's effort to collect the debt through litigation. The Supreme Court in *Heintz* stated clearly that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, *even when that activity consists of litigation.*" 514 U.S. at 299 (emphasis added). To limit the litigation activities that may form the basis of FDCPA liability to exclude complaints served personally on consumers to facilitate debt collection, the very act that formally commences such a litigation, would require a nonsensical narrowing of the common understanding of the word "litigation" that we decline to adopt.[1]

**[8]** Turning to the merits, we conclude that the Complaint did not violate §§ 1692e or 1692f. The Complaint correctly calculated the total debt Donohue owed, accurately stated the principal owed, and accurately listed the total non-principal amount owed inclusive of interest and finance charges. The Complaint sought recovery of sums to which Quick Collect was clearly and lawfully entitled, including $270.99 in principal, $24.07 in late fees assessed pursuant to Children's Choice's Office Financial Policy signed by Donohue, and $8.82 in interest assessed at a lawful rate. The Complaint did not contain a false, deceptive, or misleading representation for purposes of liability under §§ 1692e or 1692f just because $32.89, labeled as 12% interest on principal, was actually comprised of finance charges of $24.07 and post-assignment interest of $8.82, but not labeled as such.

---

[1]Quick Collect suggests that a complaint, because it can be corrected by amending the offending pleading, should not constitute an actionable communication. But all communications can be "amended" in this way by simply sending out a subsequent communication correcting the error. Sections 1692e and 1692f do not suggest that otherwise unlawful representations are permitted so long as they are followed up, at some later time, with a communication correcting the statements that gave rise to the communication's unlawful nature. We see no reason to treat complaints differently where there was no effort to correct the error before an answer was filed.

**[9]** In *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009), Chief Judge Easterbrook concluded for a panel of the Seventh Circuit that a false or misleading statement is not actionable under § 1692e unless it is material. With reasoning that we consider persuasive, Chief Judge Easterbrook observed that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." *Id.* at 757 (citing *Carter v. United States*, 530 U.S. 255 (2000); *Neder v. United States*, 527 U.S. 1 (1999)). There is no "reason why materiality should not equally be required in an action based on § 1692e." *Id.* The purpose of the FDCPA, "to provide information that helps consumers to choose intelligently," would not be furthered by creating liability as to immaterial information because "by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Id.* at 757-58. The Seventh Circuit framed materiality as a corollary to the well-established proposition that "[i]f a statement would not mislead the unsophisticated consumer, it does not violate the [Act]—even if it is false in some technical sense." *Id.* at 758 (quoting *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) (alterations in original)). Thus, "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Id.* The Sixth Circuit has reached the same conclusion. *See Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009) (concluding that a false but non-material statement is not actionable under § 1692e).

**[10]** We agree with the approach adopted by the Sixth and Seventh Circuits. We have consistently held that whether conduct violates §§ 1692e or 1692f requires an objective analysis that considers whether "the least sophisticated debtor would likely be misled by a communication." *Guerrero*, 499 F.3d at 934 (internal quotation marks omitted) (stating this standard applies to §§ 1692d, 1692e, and 1692f); *see Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1099-1100 (9th Cir. 1996); *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir.

1988). We now conclude that false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f.

Our conclusion is in harmony with our recognition in *Clark* that "the remedial nature of the [FDCPA] . . . requires us to interpret it liberally." 460 F.3d at 1176. We noted in *Clark* that the FDCPA's remedial purpose is animated by "the likely effect of various collection practices on the minds of unsophisticated debtors." *Id.* at 1179. But immaterial statements, by definition, do not affect a consumer's ability to make intelligent decisions. *See Hahn*, 557 F.3d at 757-58. We recognize, as the Seventh Circuit already has, that the materiality requirement functions as a corollary inquiry into whether a statement is likely to mislead an unsophisticated consumer. The materiality inquiry focuses our analysis on the same ends that concerned us in *Clark*—protecting consumers from misleading debt-collection practices.

**[11]** Applying this standard to the statement at issue in the Complaint, we conclude that it is immaterial and not actionable under §§ 1692e or 1692f. We agree with the reasoning in *Hahn*, in which Chief Judge Easterbrook concluded, under analogous facts, that the statement at issue there was immaterial. *Id.* at 757. In *Hahn*, a demand letter stated that Marylou Hahn owed $1,134.55, of which $1,051.91 was the "amount due" and of which $82.64 was "interest due." *Id.* at 756. Hahn argued that the letter contained a false representation concerning the character of the debt in violation of § 1692e. The total owed was conceded to be accurate, but the labels for the two sums comprising the total debt were technically incorrect: $82.64, labeled "interest," included only *post*-assignment interest, and $1,051.91, labeled "amount due," included *pre*-assignment interest and principal. *Id.* Similarly, here, the total owed was accurately stated in the Complaint, but the label for at least one of the two sums comprising the total debt was technically incorrect: $32.89, labeled "interest . . . of 12%,"

included pre-assignment finance charges and interest. In *Hahn*, the Seventh Circuit concluded that mislabeling a sum "interest" when it included only part of the interest owed, and mislabeling a sum "amount due" when it included both principal and interest, was not a materially false characterization of the debt. Chief Judge Easterbrook explained that "[a]pplying an incorrect *rate* of interest would lead to a real injury" but "reporting interest in one line item rather than another (or in two line items) harms no one and . . . may well assist some people." *Id.* at 757. We conclude, consistent with *Hahn*, that the Complaint's mislabeling $32.89 as 12% interest, when $32.89 included both interest and pre-assignment finance charges, is not materially false.

[12] The reason for applying the materiality requirement is also implicated by the facts of this case. In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response. *See id.* Here, the statement in the Complaint did not undermine Donohue's ability to intelligently choose her action concerning her debt. Based on the information in the Complaint, Donohue could have challenged the accuracy or legality of the total debt and principal owed, futile as that may have been, or Donohue could have paid the accurately stated sum to settle her debt. Even if the Complaint had separated $32.89 into interest and finance charges, we can conceive of no action Donohue could have taken that was not already available to her on the basis of the information in the Complaint—nor has Donohue articulated any different action she might have chosen. Therefore, we conclude that the statement in the Complaint was not material and hence not actionable under §§ 1692e and 1692f.

## C

[13] Donohue concedes that her state-law claims "are totally predicated upon the court finding a violation of the

FDCPA." We have concluded that Quick Collect did not violate the FDCPA. Therefore, Donohue cannot prevail on her state-law claims either.

## III

We affirm the district court's order granting summary judgment to Quick Collect, denying Donohue's motion for summary judgment, and denying Donohue's motion to strike Quick Collect's motion for summary judgment. We also affirm the district court's denial of Donohue's motion for class certification as moot.

**AFFIRMED.**