Filed 1/17/23

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALEXANDER ZAVAL AGUILAR,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>MANDARICH LAW GROUP, LLP, et al.,<br><br>  Defendants and Respondents. | H049860<br>(Santa Clara County<br> Super. Ct. No. 21CV378926) |


In this case we consider whether a party seeking to establish a prima facie violation of Civil Code section 1788.17 of the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act), premised on a misrepresentation in connection with the collection of a debt as specified by those incorporated provisions of the federal Fair Debt Collection Practices Act (FDCPA), must show the alleged violation is material.  We decide materiality is a proper consideration under the Rosenthal Act where the alleged state law violation is premised on enumerated provisions of the federal statute, which federal courts uniformly interpret as incorporating a materiality requirement.

Plaintiff and appellant Alexander Zaval Aguilar (Aguilar) incurred a debt on a loan issued by consumer lender OneMain Financial, Inc. (OneMain Financial).  OneMain Financial later sold or assigned the debt to OneMain Financial Issuance Trust 2015–1 (OneMain Financial Issuance Trust), and that entity charged off the debt and sold it to a debt buyer, CACH, LLC (CACH).  CACH filed a debt collection action against Aguilar

to collect the charged-off debt (collection action).  CACH later dismissed the collection action without prejudice.  CACH's dismissal followed Aguilar's attempt to file a cross-complaint alleging statutory violations of the Rosenthal Act (Civ. Code, § 1788 et seq.),[1] premised on incorporated provisions of the federal FDCPA and on an alleged violation of the California Fair Debt Buying Practices Act (CFDBPA), based on CACH's apparent misidentification of the charge-off creditor as OneMain Financial rather than OneMain Financial Issuance Trust.

After CACH dismissed its action, Aguilar brought suit against CACH and its counsel in the collection action, Mandarich Law Group LLP (MLG) and Christopher Mandarich (Mandarich), alleging that CACH, MLG, and Mandarich made false or misleading representations in the collection action, in violation of the Rosenthal Act.  In response to Aguilar's lawsuit, defendants and respondents MLG and Mandarich filed an anti-SLAPP motion[2] under Code of Civil Procedure section 425.16 to strike the Rosenthal Act claim against them from Aguilar's complaint.[3]  The trial court granted the anti-SLAPP motion after deciding, under the second prong of the statutory analysis, that Aguilar had not demonstrated a likelihood of prevailing on the merits of his claim against MLG and Mandarich.

On appeal from the granting of the anti-SLAPP motion, Aguilar challenges the trial court's ruling on the grounds that the court (1) improperly weighed the evidence concerning the identity of the charge-off creditor, (2) improperly admitted and considered hearsay evidence submitted in support of the anti-SLAPP motion, and (3) erred in finding that MLG and Mandarich did not make a false or misleading statement in the collection action against Aguilar.  Because we decide the trial court correctly considered whether

---

[1] Unspecified statutory references are to the Civil Code.

[2] An anti-SLAPP motion is "a special motion to strike a 'strategic lawsuit against public participation (SLAPP).' " (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 773–774.)

[3] CACH did not join the anti-SLAPP motion and is not a party to this appeal.

2

Aguilar had made a prima facie showing of a material misrepresentation under the Rosenthal Act, insofar as the alleged violation is premised on a purported failure to comply with the requirements of the federal FDCPA, we conclude the trial court did not err in finding the complaint lacked minimal merit. We therefore affirm the order granting MLG's and Mandarich's anti-SLAPP motion.

## I. FACTS AND PROCEDURAL BACKGROUND[4]

### A. The Alleged Debt

In October 2015, Aguilar incurred a debt in the form of a consumer credit account with OneMain Financial. The credit account was for the purpose of purchasing food, groceries, and other household items. When Aguilar could no longer afford to make payments on the credit account, he stopped paying. Aguilar denies that he owes any money on the debt, which he refers to as the "alleged debt."

At some point thereafter, OneMain Financial sold, assigned, or transferred the debt to OneMain Financial Issuance Trust. In June 2016, Aguilar made his last payment on the debt. In January 2017, OneMain Financial Issuance Trust " 'charged off' " the debt by removing it from its books as an asset and treating it as a loss or expense. According to Aguilar, OneMain Financial Issuance Trust therefore became " 'the charge-off creditor at the time of charge off' " within the meaning of section 1788.58 of the CFDBPA. The account was subsequently sold and assigned to CACH.

---

[4] We draw the following facts from the pleadings and supporting declarations submitted in the trial court. We accept Aguilar's factual assertions as true for the purpose of resolving whether the trial court erred in granting the anti-SLAPP motion and consider only whether any contrary evidence from MLG and Mandarich establishes their entitlement to prevail as a matter of law. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*); *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 754 (*Laker*).)

3

*B. Collection Action*

In September 2020, MLG filed a complaint in the collection action on behalf of CACH. Mandarich, who is a partner of MLG, was counsel of record in the collection action and signed the complaint.

The collection action identified "[t]he charge-off creditor at the time of charge off" as OneMain Financial, located at 300 St. Paul Street, Baltimore, MD 21202, and the account No. associated with the debt as XXXX7855. The collection action complaint alleged that Aguilar failed to make payments due on the account, resulting in a debt balance at charge-off of $5,214.02, and that CACH, as the debt buyer, was the sole owner of the debt. The collection action asserted that as a result of nonpayment on the account, Aguilar was liable under theories of breach of contract and open book account for damages of $5,214.02.

In the course of discovery in the collection action, Aguilar's counsel, Fred Schwinn (Schwinn), came to believe that the complaint in the collection action had not correctly identified the charge-off creditor. According to Schwinn, "the true name of the creditor at charge-off was OneMain Financial Issuance Trust 2015-1, and not OneMain Financial Inc., as stated in paragraph 4 of [the collection action] Complaint." In February 2021, Schwinn contacted Mandarich to request a stipulation for leave to file a cross-complaint in the collection action, based on violations of the Rosenthal Act and the CFDBPA (§§ 1788.50–1788.64) arising from the purported misrepresentation of the charge-off creditor in the collection action complaint. Shortly after, on February 18, 2021, CACH filed a unilateral request for dismissal, without prejudice, of the collection action complaint.

*C. Aguilar's Complaint*

On March 2, 2021, Aguilar filed the lawsuit from which this appeal arises. The complaint seeks declaratory relief and damages, claiming defendants are engaged in unfair and deceptive collection practices in violation of the Rosenthal Act and maintain a

4

"routine practice of filing and serving" noncompliant collection complaints in violation of the CFDBPA. Aguilar's complaint asserts that defendant CACH "fail[ed] to truthfully state 'the name and an address of the charge-off creditor at the time of charge-off' " in violation of section 1788.58, subdivision (a)(6), of the CFDBPA (§ 1788.50 et seq.). As to defendants MLG, Mandarich, and CACH, the complaint asserts a single claim that respondents' misrepresentation of the name of the charge-off creditor violated section 1788.17 of the Rosenthal Act, as premised on violations of the federal FDCPA (15 U.S.C. § 1692 et seq.) for "false, deceptive, and misleading representations in an attempt to collect the debt" (15 U.S.C. §§ 1692e & 1692e(10)) and "misrepresent[ing] the character or legal status of the debt." (*Id.*, § 1692e(2)(A).)[5]

### D. Anti-SLAPP Motion

MLG and Mandarich (together, MLG) filed an anti-SLAPP motion to strike the Rosenthal Act claim from Aguilar's complaint. MLG argued the trial court should strike the claim because it arose from protected litigation activity (namely, the filing of the collection action complaint on behalf of its client, CACH) and Aguilar had no probability of prevailing on the merits.

On this second prong, MLG asserted that the collection action complaint made no misrepresentation regarding the charge-off creditor, and even if it was inaccurate to identify OneMain Financial as the charge-off creditor, it was not a material misrepresentation and therefore does not support an actionable violation of the relevant statutes. According to MLG, OneMain Financial is the entity that charged off the debt, while OneMain Financial Issuance Trust is a special purpose vehicle trust wholly owned and administered by OneMain Financial and used to back its consumer loans. MLG

---

[5] We examine in more detail (part II.C.1, *post*), and as relevant to the claim at issue here, the relationship between the Rosenthal Act, the federal FDCPA, and the CFDBPA. In his complaint, Aguilar identifies title 15 United States Code section 1692e, 1692e(2)(A), and 1692e(10) as the relevant federal provisions underlying MLG's alleged Rosenthal Act violation.

maintained that because Aguilar's "only contact" about his loan was through OneMain Financial, which "serviced the account and administered the special purpose vehicle trust" until OneMain Financial charged off the loan and sold it to CACH, naming OneMain Financial as the charge-off creditor was accurate, or, if inaccurate, was not a material misrepresentation.

MLG also asserted that Aguilar could not prevail on his claim regarding the identity of the charge-off creditor, because Aguilar should have raised the claim through a compulsory cross-complaint and his claim was therefore procedurally barred. Further, MLG argued that the trial court should strike Aguilar's request for declaratory relief as coextensive with the Rosenthal Act claim.

MLG submitted declarations and exhibits in support of the anti-SLAPP motion. Mandarich submitted a declaration in which he asserted his familiarity with the issues before the court and attached documents, including copies of the 2015 promissory note for OneMain Financial's loan to Aguilar and the 2017 bill of sale and assignment between OneMain Financial and CACH. June D. Coleman, attorney of record for Mandarich and MLG, also submitted a declaration in which she attached a copy of an excerpt of a memorandum titled "September 24, 2015 Private Placement Memorandum Re: Financial Issuance Trust 2015-3."

Aguilar filed a written opposition to the anti-SLAPP motion and submitted a declaration attesting to the nature of the consumer credit account issued to him by OneMain Financial and the collection action filed against him. In addition, Aguilar attached the declaration of his counsel, Schwinn, who described the litigation history of the collection action and discovery regarding "the true name of the creditor at charge-off" in the collection action. Aguilar also filed a request for judicial notice of over 100 court pleadings in what appeared to be other, similar collection cases filed by MLG in 2021.

Aguilar conceded under the first prong of the anti-SLAPP statute that his claims arose from conduct protected by Code of Civil Procedure section 425.16. Nevertheless,

6

Aguilar claimed that he met his prima facie burden on the second prong of showing a substantial likelihood of success on the merits. Aguilar argued that because the FDCPA and Rosenthal Act are strict liability statutes, the incorrect identification of the charge-off creditor in the collection action complaint established a prima facie violation of these provisions, entitling him to damages under the Rosenthal Act. Aguilar disputed MLG's reliance on materiality at this stage of the litigation. Aguilar argued that materiality is a factual question not appropriate for resolution in an anti-SLAPP proceeding and, in any event, that misrepresenting the creditor's identity is material under the applicable, least sophisticated consumer standard.

Aguilar challenged MLG's assertion that the Rosenthal Act claim was compulsory and should have been asserted as a cross-complaint in the underlying collection action. Aguilar also maintained there was no "claim" for declaratory relief for the court to strike, and to the extent MLG relied on the fact that it had dismissed the collection action complaint (thus removing any active controversy for purposes of declaratory relief), the dismissal was without prejudice and would not preclude defendants from refiling the collection case.

MLG filed a reply brief reiterating its prior arguments that Aguilar had failed to submit evidence that established a violation of the FDCPA provisions upon which Aguilar based his Rosenthal Act claim and that any alleged misrepresentation was not material.

*E. Order Granting the Anti-SLAPP Motion*

The trial court issued a written order granting MLG's anti-SLAPP motion. It denied Aguilar's request for judicial notice, finding the requested materials were not relevant to the disposition of the anti-SLAPP motion. On the first prong of the anti-SLAPP motion, the court noted there was no dispute that Aguilar's complaint against MLG was based on the contents of the pleading filed in the collection action and

7

therefore arose from protected conduct in the form of statements made in connection with civil litigation. (Code Civ. Proc., § 425.16, subd. (e)(1).)

Regarding the likelihood of success on the merits of Aguilar's Rosenthal Act claim, the trial court questioned whether the FDCPA and Rosenthal Act are indeed strict liability statutes and cited case authority applying an objective standard to decide whether the conduct at issue would be misleading to the least sophisticated debtor. The court noted that Aguilar's Rosenthal Act claim relies on an alleged violation of title 15 United States Code section 1692e, concerning false representations of the " 'character, amount, or legal status' " of the debt and reasoned that the identity of the " 'charge-off creditor' " does not come under any of those categories. The court observed that the federal statute does not define " 'charge-off creditor' " and therefore did not support Aguilar's contention that MLG's identification of OneMain Financial as the charge-off creditor was false.

The court rejected Aguilar's arguments regarding both the inaccuracy of the description of the charge-off creditor in the collection action complaint and that materiality could not be determined as a matter of law. It noted that the CFDBPA requires only that a complaint by a debt buyer on a consumer debt allege the name and an address of the charge-off creditor "in sufficient form so as to reasonably identify the charge-off creditor." (§ 1788.58, subd. (a)(6), hereafter § 1788.58(a)(6).) In the absence of additional statutory language concerning charge-off creditor in the FDCPA, and in light of the evidence submitted by MLG that showed that OneMain Financial had administered Aguilar's account until the debt was sold, the court agreed with MLG that the pleading in the collection action was not inaccurate. It further agreed with MLG that even if the collection action complaint was inaccurate, identifying OneMain Financial as the charge-off creditor rather than OneMain Financial Issuance Trust was not a material misrepresentation. The court decided that, viewed objectively, the alleged misidentification of the charge-off creditor would not mislead the least sophisticated

8

debtor and therefore does not qualify as an actionable violation of the FDCPA and, by extension, the Rosenthal Act. The court concluded that Aguilar had not shown a probability of prevailing on the merits of his claim against MLG.

Aguilar filed a timely notice of appeal of the trial court's order granting MLG's anti-SLAPP motion.

## II. DISCUSSION

### A. *The Anti-SLAPP Statute*

Code of Civil Procedure section 425.16, commonly known as the anti-SLAPP statute, provides that a cause of action arising from an act in furtherance of a person's constitutional right of petition or free speech in connection with a public issue is subject to a special motion to strike, unless the plaintiff establishes a probability of prevailing on the claim. (Code Civ. Proc., § 425.16, subd. (b)(1).) A court evaluates a special motion to strike in two steps. The first examines the nature of the conduct that underlies the plaintiff's allegations to determine whether it is protected by Code of Civil Procedure section 425.16; the second assesses the merits of the plaintiff's claim. (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321 (*Barry*); see also *Laker*, *supra*, 32 Cal.App.5th at p. 760.)

In the first step, "the trial court determines whether the cause of action 'arises from' an 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " (*Laker*, *supra*, 32 Cal.App.5th at p. 760, quoting *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422.) The first step of the analysis is not at issue. Aguilar concedes his claim against MLG arises from protected conduct under Code of Civil Procedure section 425.16, subdivision (e), namely the allegations in the complaint MLG filed on behalf of CACH in the collection action. The parties' dispute centers on the second step of the anti-SLAPP analysis.

9

If the defendant prevails at the first step, the burden shifts to the plaintiff to demonstrate the merit of the challenged claim or claims by establishing a probability of success. (Code Civ. Proc., § 425.16, subd. (b)(1); *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).) The plaintiff must " 'demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*).)

In evaluating probability of success at the second step, "a trial court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based' . . . ([Code Civ. Proc., § 425.16], subd. (b)(2))." (*Barry*, *supra*, 2 Cal.5th at p. 321.) " ' " 'The court accept[s] as true the evidence favorable to the plaintiff [citation] and evaluate[s] the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " ' " (*Ibid.*) "[T]he statute permits the court to 'consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' ([Code Civ. Proc., § 425.16], subd. (b)(2).) Through this 'summary-judgment-like procedure,' the statute authorizes the quick dismissal of meritless claims, thereby ensuring that SLAPP suits are ended ' " 'early and without great cost to the SLAPP target.' " ' " (*Id.* at p. 324.) "If the plaintiff is unable to demonstrate that his or her claim has at least minimal merit, then the trial court should deem the cause of action a SLAPP and should strike it." (*Laker*, *supra*, 32 Cal.App.5th at p. 760.)

*B. Standard of Review*

"We review de novo the grant or denial of any anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park*, *supra*, 2 Cal.5th at p. 1067.) We consider the pleadings and declarations, accepting as true the evidence that favors the plaintiff (here, Aguilar) and evaluating the defendant's evidence (here,

10

MLG) " ' " 'only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " ' " (*Barry*, *supra*, 2 Cal.5th at p. 321.)

*C. Analysis*

Aguilar argues that he met his prima facie burden and the trial court erred in finding otherwise. He contends that in granting respondents' anti-SLAPP motion, the court erred by considering respondents' unauthenticated hearsay evidence, improperly weighing that evidence, and making a "materiality" determination based on case law interpreting the federal FDCPA, which he maintains is not a proper consideration under the Rosenthal Act. Because Aguilar's contention that he " ' "stated and substantiated a legally sufficient claim" ' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88) under the Rosenthal Act to prevail against the anti-SLAPP motion rests upon underlying requirements of the CFDBPA and federal FDCPA, we begin our analysis by outlining the relevant provisions of the Rosenthal Act, the CFDBPA and the FDCPA.

1. <u>Statutory Basis for Aguilar's Rosenthal Act Claim</u>

Aguilar's sole claim against MLG is based on an alleged violation of the Rosenthal Act—namely section 1788.17. That section provides that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [15 U.S.C. s]ections 1692b to 1692j, inclusive . . . and shall be subject to the remedies in [15 U.S.C. s]ection 1692k . . . ." (§ 1788.17.) The Rosenthal Act, through section 1788.17, thus "incorporates by reference the [federal] FDCPA's requirements . . . and makes available the FDCPA's remedies for violations." (*Riggs v. Prober & Raphael* (9th Cir. 2012) 681 F.3d 1097, 1100.) A violation of any of these FDCPA provisions is per se a violation of the Rosenthal Act. (*Best v. Ocwen Loan Servicing, LLC* (2021) 64 Cal.App.5th 568, 575 (*Best*).) A Rosenthal Act claim premised on a violation of the federal FDCPA, however, "remains a state claim." (*Alkan v. Citimortgage, Inc.* (N.D.Cal. 2004) 336 F.Supp.2d 1061, 1065 (*Alkan*).)

11

Whether the trial court properly concluded Aguilar's section 1788.17 claim lacks minimal merit thus depends on whether the alleged violation of the underlying FDCPA provisions " 'is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [Aguilar] is credited.' " (*Soukup*, *supra*, 39 Cal.4th at p. 291.)

The federal FDCPA regulates the conduct of debt collectors by prohibiting "any false, deceptive, or misleading representation or means in connection with the collection of any debt." (15 U.S.C. § 1692e.)  It is a violation of the FDCPA to falsely represent "the character, amount, or legal status of any debt" (*id.*, § 1692e(2)(A)) or to "use . . . any false representation or deceptive means to collect or attempt to collect any debt." (*Id.*, § 1692e(10).)  A false or misleading statement is not actionable under the FDCPA unless it is material.  (*Afewerki v. Anaya Law Group* (9th Cir. 2017) 868 F.3d 771, 773 ["To constitute a violation of the FDCPA, a false statement must be 'material.' "] (*Afewerki*), citing *Donohue v. Quick Collect, Inc.* (9th Cir. 2010) 592 F.3d 1027, 1033 (*Donohue*).)[6]

The FDCPA is a strict liability statute that does not ordinarily require proof of an intentional violation.  (*Tourgeman v. Collins Financial Services, Inc.* (9th Cir. 2014) 755 F.3d 1109, 1119 (*Tourgeman*); *Gonzales v. Arrow Financial Services, LLC* (9th Cir. 2011) 660 F.3d 1055, 1061 (*Gonzales*).)  The question of " 'a debt collector's liability under § 1692e of the FDCPA is an issue of law.' " (*Tourgeman*, at p. 1119.)  "The analysis is objective and 'takes into account whether the "least sophisticated debtor would likely be misled by a communication." ' " (*Ibid.*)[7]  "The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would

---

[6] Every federal circuit court of appeal to consider the question has decided that the FDCPA requires materiality.  (See *Tavernaro v. Pioneer Credit Recovery* (10th Cir. 2022) 43 F.4th 1062, 1067 & fn. 3 (*Tavernaro*).)

[7] Some federal circuit court of appeals measure materiality under the FDCPA from the perspective of the "reasonable consumer" rather than the "unsophisticated" or "least sophisticated consumer." (See *Tavernaro*, *supra*, 43 F.4th at pp. 1068–1070.)  Those distinctions are immaterial to our analysis here.

12

deceive or mislead a reasonable debtor.' [Citation.] The standard is 'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naive,' particularly when those individuals are targeted by debt collectors." (*Gonzales*, at pp. 1061–1062.) "At the same time, the standard 'preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care.' " (*Id.* at p. 1062.) "In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." (*Donohue*, *supra*, 592 F.3d at p. 1034.)

Here, the claimed false statement in contravention of the federal FDCPA (specifically, title 15 United States Code section 1692e(2)(A) and e(10)) and comprising the alleged section 1788.17 violation is based on the collection action complaint's alleged misidentification of the charge-off creditor, which Aguilar contends violated section 1788.58(a)(6) of the California Fair Debt Collection Practices Act (CFDCPA).

The California Legislature enacted the CFDCPA in 2013 as a corollary to existing state and federal laws regulating the practice of debt collection. (See Stats. 2013, ch. 64, § 1.) The CFDCPA regulates the activities of debt buyers, which the statute defines as "a person or entity that is regularly engaged in the business of purchasing charged-off consumer debt for collection purposes." (§ 1788.50, subd. (a)(1).) In enacting the CFDCPA, the Legislature cited the need to "create documentation and process standards for the collection of consumer debt that all interested parties can easily understand" and to ensure the "[d]ocumentation used to support the collection of a debt [is] sufficient to prove that the individual who is being asked to pay the debt is in fact the individual associated with the original contract or agreement, and that the amount of indebtedness is accurate." (Stats. 2013, ch. 64, § 1.)

The CFDCPA requires, in relevant part, that the complaint allegations in an "action brought by a debt buyer on a consumer debt" include "[t]he name and an address

13

of the charge-off creditor at the time of charge off and the charge-off creditor's account number associated with the debt. The charge-off creditor's name and address shall be in sufficient form so as to reasonably identify the charge-off creditor." (§ 1788.58(a)(6).)

### 2. The Factual Basis for the Alleged CFDBPA Violation Is Insufficient to Establish a Prima Facie Violation of Section 1788.17 of The Rosenthal Act

Aguilar contends the trial court erred in finding that his Rosenthal Act claim lacked minimal merit under the applicable anti-SLAPP standards. He asserts that the failure of the collection action complaint to comply with the charge-off creditor disclosure requirement set forth in the CFDBPA (§ 1788.58 (a)(6)) is "patent" when comparing the collection action complaint with the verified discovery responses from the collection action which supply the relevant debt assignment information. Aguilar argues that the verified discovery responses and collection action complaint together satisfy his burden to make a prima facie showing of facts to support a judgment in his favor, because the section 1788.58 violation "necessarily also constitutes a false statement in an attempt to collect a debt" under the federal FDCPA. (Italics omitted.) He contends that in finding otherwise, the trial court improperly weighed the evidence submitted, including unauthenticated hearsay, and applied federal case law based on a "materiality" standard that is inapplicable to the Rosenthal Act.

As a preliminary matter, we need not decide whether the trial court improperly considered and weighed the evidence submitted by MLG because we conclude that Aguilar has not met his initial burden to demonstrate that his prima facie showing is enough to win a favorable judgment on his Rosenthal Act claim. We recognize this "threshold is 'not high' " and "[c]laims with minimal merit proceed." (*Citizens of Humanity, LLC v. Hass* (2020) 46 Cal.App.5th 589, 598.) However, having carefully considered Aguilar's arguments and the evidence Aguilar submitted in opposition to the anti-SLAPP motion, we decide that Aguilar has not made a prima facie showing sufficient to establish a probability of success on his Rosenthal Act claim.

14

That claim, as pleaded in Aguilar's complaint, is derivative of the federal FDCPA's prohibition against any use of "false, deceptive, or misleading representation or means in connection with the collection of any debt" (15 U.S.C. § 1692e), which in turn is based on the alleged violation of section 1788.58(a)(6) of the CFDBPA. For reasons we explain below, we question whether the evidence submitted by Aguilar is sufficient to establish a prima facie violation of the underlying claim based on section 1788.58(a)(6). But even assuming for purposes of this appeal that Aguilar has shown a violation of the CFDBPA, we conclude the nature of the violation is insufficient to establish that MLG made a "false representation" of the "character, . . . or legal status" of the debt (15 U.S.C. § 1692e(2)(A)), as required to demonstrate the requisite probability of success on Aguilar's Rosenthal Act claim. (Code Civ. Proc., § 425.16, subd. (b)(1); see *Wilson*, *supra*, 7 Cal.5th at p. 884; *Soukup*, *supra*, 39 Cal.4th at p. 291.) We examine each issue—the claimed CFDBPA violation and resulting Rosenthal Act claim—in turn.

The CFDBPA violation, though asserted in the complaint only against CACH (as the debt buyer), serves as the factual basis for Aguilar's Rosenthal Act claim. That is, because the Rosenthal Act claim at issue in this appeal is premised on the alleged, underlying CFDBPA violation, Aguilar's prima facie showing in support of the Rosenthal Act claim depends on whether he submitted sufficient evidentiary support for his CFDBPA claim.

Crediting, as we must, Aguilar's evidence submitted in opposition to the anti-SLAPP motion, we accept as true the information provided in the declaration submitted by Aguilar's counsel, Schwinn, including discovery responses provided by CACH in the collection action. (*Soukup*, *supra*, 39 Cal.4th at p. 291; *Barry*, *supra*, 2 Cal.5th at p. 321.) According to Schwinn, the document attached to CACH's discovery responses shows that "the true name of the creditor at charge-off was OneMain Financial Issuance Trust 2015-1 and not OneMain Financial Inc., as stated in paragraph 4 of the [collection action complaint]." Aguilar claims that because the CFDBPA mandates identification of the

15

charge-off creditor, not merely the current creditor or original creditor, any incorrect identification of the charge-off creditor violates the CFDBPA (§ 1788.58(a)(6)) and necessarily constitutes a " 'false representation of' " the character and legal status of the debt and under title 15 United States Code section 1692e(2)(A)).  Aguilar submits that MLG's failure to identify OneMain Financial Issuance Trust as the true name of the charge-off creditor in the collection action—rather than OneMain Financial—violated section 1788.58(a)(6) of the CFDBPA and constituted a prima facie false statement in connection with the collection of the debt, in violation of the Rosenthal Act (§ 1788.17; 15 U.S.C. § 1692e).  This argument, however, glosses over key language in the CFDBPA and conflates the statutory standards applicable to the CFDBPA with that of the federal FDCPA and Rosenthal Act.

With respect to the underlying violation, Aguilar cites the requirement in the CFDBPA that a debt buyer's collection complaint against a consumer debtor allege "[t]he name and an address of the charge-off creditor at the time of charge off" (§ 1788.58(a)(6)) but ignores the accompanying dictate that "[t]he charge-off creditor's name and address shall be in sufficient form so as to reasonably identify the charge-off creditor."  (*Ibid*.)

The purpose of the CFDBPA, as set forth in the uncodified legislative findings and declarations, is to regulate "the adequacy of documentation required to be maintained by the [debt buying] industry in support of its collection activities and litigation" (Stats. 2013, ch. 64, § 1, subd. (a)) and ensure the "[d]ocumentation used to support the collection of a debt [is] sufficient to prove that the individual who is being asked to pay the debt is in fact the individual associated with the original contract or agreement" (*id.*, § 1, subd. (c)).  Given these statutory purposes, the requirement that the collection complaint allege "[t]he name and an address of the charge-off creditor at the time of charge off . . . in sufficient form so as to reasonably identify the charge-off creditor"

16

(§ 1788.58(a)(6)) appears intended to ensure adequate documentation to link the debt buyer's claim to the charge-off creditor and consumer account of the debtor.

Whether the nature of the relationship between OneMain Financial and OneMain Financial Issuance Trust is such as might satisfy the "reasonably identify" standard set out in section 1788.58(a)(6) is a factual question that we need not resolve for purposes of this appeal. Instead, even if we assume, without deciding, that the verified discovery response from the collection action is sufficient to establish a prima facie violation of section 1788.58(a)(6)'s charge-off creditor disclosure requirement, we are not persuaded that the asserted CFDBPA violation supports a Rosenthal Act violation for false or misleading statements in connection with collection of a debt, as stated in the federal FDCPA.

As noted *ante*, whether debt collection efforts are false, deceptive, or misleading for purposes of the federal FDCPA requires an objective analysis that " 'takes into account whether the "least sophisticated debtor would likely be misled by a communication." ' " (*Tourgeman*, *supra*, 755 F.3d 1109 at p. 1119.) This inquiry "does not ask the subjective question of whether an individual plaintiff was actually misled by a communication. Rather, it asks the objective question of whether the hypothetical least sophisticated debtor would likely have been misled." (*Afewerki*, *supra*, 868 F.3d at p. 775.) A logical " 'corollary' to the least sophisticated debtor standard" under the FDCPA is the requirement that a misrepresentation must be material to be actionable. (*Ibid*.) The Ninth Circuit Court of Appeals in *Afewerki* explained the materiality requirement, which other federal circuits have also adopted: " '[F]alse but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under [15 U.S.C.] § 1692e.' " (*Ibid*.) Put another way, "A statement directed to consumers is designed to provide information that helps them choose intelligently, 'and by definition immaterial information neither contributes to that

17

objective (if the statement is correct) nor undermines it (if the statement is incorrect).' " (*Tavernaro*, *supra*, 43 F.4th at p. 1068.)

Here, assuming that Aguilar has established that OneMain Financial was *not* the charge-off creditor at the time of charge off and, as a result, the collection action complaint was incorrect and did not "reasonably identify" the charge-off creditor in violation of section 1788.58(a)(6), there is no support for his contention that this translates into a de facto "false representation of" the "character, . . . or legal status of the debt" under title 15 United States Code section 1692e(2)(A).

The purported misidentification of the charge-off creditor does not implicate the debt's "character, amount, or legal status." (15 U.S.C. § 1692e(2)(A).) To the contrary, the collection action complaint accurately alleged the character of the debt (a credit account issued by OneMain Financial), the amount (a debt balance of $5,214.02 after the last date of payment on June 17, 2016), and the legal status (the debt was charged-off and purchased by CACH, the debt buyer and sole owner of the debt). (*Ibid.*) Nor do we perceive in what manner the misidentification of the charge-off creditor—under the circumstances presented here—constitutes use of a "false representation or deceptive means to collect or attempt to collect" a debt under title 15 United States Code section 1692e(10).

Aguilar has not shown how the purported misrepresentation of the charge-off creditor is a material misrepresentation under the standard applicable to alleged federal FDCPA violations, let alone how it would be likely to mislead the hypothetical least sophisticated debtor. (See *Tourgeman*, *supra*, 755 F.3d at p. 1119; *Afewerki*, *supra*, 868 F.3d at p. 775.) To the contrary, unlike the identity of a consumer's original creditor, whose "false identification in a dunning letter would be likely to mislead some consumers in a material way" (*Tourgeman*, at p. 1121), a hypothetical debtor receiving CACH's collections complaint would recognize OneMain Financial as the creditor that issued and serviced the credit account until nonpayment on the account, charge-off, and

18

sale to the debt buyer bringing the collections suit. The misidentification of the charge-off creditor in this instance (OneMain Financial instead of OneMain Financial Issuance Trust) falls squarely within the category of "mere technical falsehoods that mislead no one." (*Donohue*, *supra*, 592 F.3d at p. 1034.) Insofar as section 1788.17 "incorporates the FDCPA, so that a violation of the FDCPA is per se a violation of the Rosenthal Act" (*Best*, *supra*, 64 Cal.App.5th at p. 576), we conclude the inverse is also true: A misrepresentation that is immaterial and thus not actionable under the FDCPA fails to support a prima facie violation of section 1788.17.

In drawing this conclusion, we reject Aguilar's assertion that materiality is not a proper consideration under the Rosenthal Act. Aguilar observes that although section 1788.17 of the Rosenthal Act *incorporates* specified provisions of the federal FDCPA as per se violations under state law, the alleged violation—and any resulting liability under the Rosenthal Act—remains a state claim. He further argues that state law and federal law are, in this respect, distinct, and the concept of materiality, as developed by the federal circuit courts, does not bind California courts applying state law.

It is true that a claim under section 1788.17 that is based on conduct prohibited by the FDCPA remains a state claim. (*Alkan*, *supra*, 336 F.Supp.2d at p. 1065.) It is also true that federal circuit opinions interpreting federal law, like *Tourgeman* and *Afewerki*, though persuasive, are not binding on state courts. (See *People v. Memro* (1995) 11 Cal.4th 786, 882; *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 352.) On the other hand, in the absence of some countervailing state interest, where the federal courts' interpretation of the law is uniform, persuasive, and applies equally to the state statute, we are aware of no proscription against adopting that reasoning, or at least acknowledging its relevance to the claim under state law.

Aguilar points out that the Rosenthal Act was amended to add section 1788.17, which in its current form took effect on January 1, 2001. (Stats. 2000, ch. 688, § 1.) The statute's incorporation of specified sections of the FDCPA is expressly tied to the federal

code provisions "as they read January 1, 2001." (§ 1788.17.) Aguilar argues that at that time, the concept of materiality had not arisen with respect to FDCPA liability, and since section 1788.17 is expressly limited to the federal FDCPA as it read in 2001, any federal district or circuit court decisions since that time "are necessarily less persuasive than any that published before [s]ection 1788.17 came into effect."

Aguilar further relates the development of the materiality standard in FDCPA jurisprudence to a perceived narrowing of opportunity to obtain relief on the statutory claim in federal court—a development he submits state courts should decline to follow. Aguilar contends that because federal courts have shifted away from recognizing Article III of the United States Constitution standing for pure statutory damages cases and toward limiting Article III standing to those consumer plaintiffs who can show " 'concrete injury' " for purposes of Article III standing, "materiality will never again be an issue in federal courts, as any consumer protection case alleging a concrete injury will necessarily result from a material violation." By contrast, he argues that state judicial power under the California Constitution is vested more broadly, assigning the superior courts jurisdiction over "all other causes" apart from those specified to other courts (Cal. Const., art. VI, § 10), unlike the United States Constitution's more limited extension of judicial power to "Cases" and "Controversies" (U.S. Const., art. III, § 2; see *Massachusetts v. EPA* (2007) 549 U.S. 497, 516). Aguilar asserts that "[b]ecause Article III standing is irrelevant in California [s]uperior [c]ourts, this [c]ourt need not and should not construe materiality as an element of the [Rosenthal Act]." He also points out that the "very few California appellate decisions" which analyze the Rosenthal Act have not addressed materiality.[8]

---

[8] Indeed, we are unaware of any published appellate court authority that has addressed whether materiality is a proper consideration in evaluating a claim under section 1788.17.

Aguilar's arguments conflate the materiality requirement applied to FDCPA claims with the question of Article III standing based upon the violation of a statutory right. These are distinct concepts.[9] As various federal circuit decisions illustrate, materiality in the context of the FDCPA is not driven by federal constitutional standing jurisprudence but is a matter of statutory law, which courts address only upon confirming the threshold issue of subject matter jurisdiction. (See, e.g., *Cohen v. Rosicki, Rosicki & Assocs., P.C.* (2d Cir. 2018) 897 F.3d 75, 82, fn. 6 [clarifying that courts do not consider the "merits issue" of materiality as part of the standing analysis].) Under the FDCPA, materiality is a corollary to the least sophisticated debtor standard that enables courts to distinguish between "mere technical falsehoods that mislead no one" (*Donohue*, *supra*, 592 F.3d at p. 1034) and actionable misrepresentations under 15 U.S.C. section 1692e. Nevertheless, "the materiality requirement remains a fairly narrow exception to the general rule requiring accuracy in communications from debt collectors." (*Afewerki*, *supra*, 868 F.3d at p. 776.) Whereas material false representations "are those that could 'cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort' " (*ibid.*), immaterial false representations "are those that are 'literally false, but meaningful only to the "hypertechnical" reader.' " (*Ibid.*)

That those federal decisions applying the materiality standard postdate the California Legislature's enactment of section 1788.17 renders them no less persuasive, because the relevant statutory language of the federal FDCPA has not changed since 2001. Moreover, though the concept of "materiality" may be absent from earlier FDCPA

---

[9] The United States Supreme Court has recently clarified the "concrete injury" required for Article III standing in cases involving the violation of a statutory right. (*TransUnion LLC v. Ramirez* (2021) 594 U.S __ [141 S.Ct. 2190, 2204–2205]; see also *Spokeo, Inc. v. Robins* (2016) 578 U.S. 330, 340–341.) We reject Aguilar's contention that a shift in the jurisprudence surrounding Article III standing affects our resolution of the merits of the anti-SLAPP motion.

cases, its underpinnings (consisting of the least sophisticated consumer standard, balanced against a baseline of reasonableness in reading collection notices) have long been applied to the FDCPA. (See, e.g., *Clomon v. Jackson* (2d Cir. 1993) 988 F.2d 1314, 1318 [articulating the "widely accepted test for determining whether a collection letter violates § 1692e" using "an objective standard based on the 'least sophisticated consumer' "]; *id.* at p. 1319 [balanced against "the concept of reasonableness"].) Absent some basis in law requiring a different understanding, the express incorporation of enumerated FDCPA violations into section 1788.17 makes federal authority interpreting and defining the scope of those FDCPA violations relevant to the determination of a section 1788.17 violation premised on those FDCPA provisions. Unsurprisingly, the Ninth Circuit has held that "[t]o the extent that a Rosenthal Act claim is derivative of a 15 U.S.C. § 1692e claim, . . . false statements are also subject to the materiality requirement for purposes of the Rosenthal Act claim." (*Afewerki*, *supra*, 868 F.3d at p. 776.) We agree.

Aguilar asserts that even if materiality is deemed to be a relevant consideration to a claim under section 1788.17 of the Rosenthal Act, it is a fact-specific issue and therefore not appropriate as a basis to grant an anti-SLAPP motion. Aguilar's argument lacks support in case law interpreting the FDCPA. The question before the court in evaluating materiality is whether the conduct in connection with the collection of a debt would likely mislead a hypothetical, uninformed or naïve consumer ("least sophisticated debtor"), thus constituting an actionable misrepresentation under 15 U.S.C. section 1692e. This is an objective test. (*Tourgeman*, *supra*, 755 F.3d at p. 1119; *Afewerki*, *supra*, 868 F.3d at p. 775.) The Ninth Circuit has characterized the question of materiality as an issue of law for the court to determine. (*Tourgeman*, at p. 1119; *Gonzales*, *supra*, 660 F.3d at p. 1061.)

The objective standard lends itself to independent assessment by the court, because whether the language in a collection letter or, as relevant here, a collection

complaint, would "mislead or confuse a least sophisticated debtor does not turn on the credibility of extrinsic evidence." (*Terran v. Kaplan* (9th Cir. 1997) 109 F.3d 1428, 1432.) We are not persuaded by Aguilar's reference to an unpublished district court case in support of his contention that " '[m]ateriality is a fact-specific issue that should ordinarily be left to the trier of fact' " (*Tourgeman v. Collins Fin. Servs.* (S.D.Cal. July 26, 2011) 2011 U.S.Dist. LEXIS 81070, at *17), as that reliance ignores later Ninth Circuit decisions holding that " 'a debt collector's liability under § 1692e of the FDCPA is an issue of law' " (*Tourgeman*, *supra*, 755 F.3d at p. 1119) and fails to reconcile the purportedly "fact-specific" nature of the materiality determination with the settled application of an objective standard. (*Ibid.*)

A court tasked with an anti-SLAPP motion "does not weigh evidence or resolve conflicting factual claims." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) However, where, as here, the relevant representation in connection with the collection of the debt (i.e., the collection action complaint) is not subject to conflicting factual claims and the viability of the claim is evaluated according to an independent, objective standard of review, the court can properly ascertain the plaintiff's showing at the second step of the anti-SLAPP procedure without weighing the evidence or resolving factual disputes.

Our resolution of whether Aguilar met his burden in the second step of the anti-SLAPP analysis is bounded by the misrepresentation Aguilar alleged in his complaint. According to the evidence supplied by Aguilar, the sole misrepresentation was respondents' identification in the collection action complaint of the charge-off creditor as OneMain Financial instead of OneMain Financial Issuance Trust. Applying an objective standard, we are unable to perceive how the collection action complaint's technical failure to identify the charge-off creditor at the time of charge off, as required by section 1788.58(a)(6), could have disadvantaged even the least sophisticated debtor in responding to the complaint. This is not, as Aguilar contends, a matter of accepting "substantial compliance" with the requirements of the Rosenthal Act. Instead, we apply

the terms of the statute based on its incorporation of the federal FDCPA provisions as they have long been understood.

Having applied the settled standard for evaluating a false statement or misrepresentation as set forth in the federal FDCPA based on a false, deceptive, or misleading representation in connection with the collection of a debt, specifically title 15 United States Code section 1692e, we decide Aguilar has not met his burden to demonstrate a prima facie violation of section 1788.17 of the Rosenthal Act.[10]  Therefore, the trial court did not err in granting MLG's anti-SLAPP motion.

### III.  DISPOSITION

The trial court's order granting MLG's and Mandarich's special motion to strike under Code of Civil Procedure section 425.16 is affirmed.  Respondents are entitled to recover their reasonable costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

---

[10] Our conclusion renders it unnecessary to address the additional issue on appeal raised in response to respondents' alternative claim in support of the anti-SLAPP motion, about whether Aguilar's Rosenthal Act claim is a compulsory counterclaim that should have been brought in the collection action.

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P.J.


_____
Wilson, J.


**H049860**
*Aguilar v. Mandarich Law Group, LLP et al.*

| Trial Court: | Santa Clara County Superior Court No. 21CV378926 |
|---|---|
| Trial Judge: | Hon. Christopher G. Rudy |
| Counsel for Plaintiff and Appellant Alexander Zaval Aguilar: | Frederick William Schwinn<br>Raeon Rodrigo Roulston<br>Matthew C. Salmonsen<br>Consumer Law Center, Inc |
| Counsel Defendants and Respondents Mandarich Law Group, LLP and Christopher D. Mandarich | June D. Coleman<br>Messer Strickler Burnette, Ltd. |

**H049860**
*Aguilar v. Mandarich Law Group, LLP et al.*